JEFFERSON REALTY COMPANY, a Florida corporation v. BOARD
OF COMMISSIONERS OF EVERGLADES DRAINAGE DISTRICT
et al.

23 So. (2nd) 274                                        June Term, 1945
September 21, 1945                                           En Banc

*Manley P. Caldwell,* for appellant.
*Willard Utley,* for appellee.

TERRELL, J.:

In June, 1925, the Trustees of the Internal Improvement Fund conveyed to H. C. Rorick "a tract of lake bottom lands situated between the meander line of Lake Okeechobee and the extensions into the lake of Hillsborough and of North New River Canals," containing 847.56 acres. Rorick later conveyed his title to appellant.

In 1927 and subsequent years, the tax assessor of Palm Beach County extended on the tax rolls Everglades Drainage District special assessments and maintenance taxes against said lands without the approval or direction of the Board of

Commissioners of Everglades Drainage District. Appellant declined to pay the assessments and brought this suit for a declaratory decree to determine the validity of the assessments. On final hearing the Chancellor found that for 1935 and prior years, the assessments were invalid and enjoined their collection, but for 1936 and subsequent years, he adjudicated them to be valid and enforceable. An appeal and a cross appeal were prosecuted from the final decree.

It is admitted that the lands in question were sovereignty lands covered at the time of their purchase by the waters of Lake Okeechobee and that their sale by the Trustees of the Internal Improvement Fund was made under and by virtue of Chapter 7861, Acts of 1919. So the ultimate question is whether or not the said lands are subject to special assessments for the payment of Everglades Drainage District taxes. Other questions are urged but they all turn on the disposition of this one.

The Chancellor held the lands of appellant taxable on the theory that in 1935 they became reclaimed and automatically became subject to drainage assessments under the omnibus clause "all other lands" embraced in Chapter 14717, Acts of 1931, and subsequent acts imposing Everglades Drainage District assessments.

Technically there is basis for this holding but historically there is no support for it. The Board of Commissioners of Everglades Drainage District was created by Chapter 6456, Acts of 1913; the same act defined the powers of the Board, imposed the taxes and embodied an omnibus clause identical to the one relied on here. It also required the Board to list and certify the lands to the tax assessors for drainage taxes and this was their warrant for extending them on the tax rolls. The act, in other words, contained a complete scheme for imposing Everglades Drainage taxes. The Board did not certify the assessments in question and as was their custom held that the act did not impose them. The reason for this holding was that they were a separate class of lands not contemplated by any of the three Everglades assessments.

The Everglades drainage District was composed of swamp and overflowed lands that came to the State under the Swamp

Land Grant Act of 1850. These lands were a separate and distinct class of lands from sovereignty lands, the class of lands involved in this litigation.

It was the practice of the legislature by Chapter 6456, Acts of 1913, and all subsequent Acts to impose Everglades Drainage taxes by classifying and describing the lands by sections and fractions thereof on which the designated class of tax was imposed and no classification or description ran below the meander line of Lake Okeechobee. The lands below the meander line of the lake were sovereignty lands under the bed of the lake and were not considered subject to the tax for draining swamp and overflowed lands. Under the various Acts, there were generally three taxable zones and the omnibus clause "all other lands" was applied to the third class that received the least benefits from drainage and was most remote from the drainage work. To apply the clause "all other lands" to the lands in question brings them in a class never contemplated by the legislature and one in which they were never so classified by the Board. It is admitted that the assessment can only be accomplished by extending the section lines across the meander line of the lake and making new fractions of sections for tax purposes. There is no authority in the Act for this and the rule is that no Act should be construed to impose a tax unless its terms definitely so provide.

We think the foregoing concludes the question but there is another reason equally as impelling. The lands in question were vested in the State by right of sovereignty and were conveyed to the Trustees of the Internal Improvement Fund by Chapter 7861, Acts of 1919. The said act authorized the Trustees of the Internal Improvement Fund to convey them and make provision for their reclamation or to contract with their vendee to reclaim them. In making the sale in question, the Trustees of the Internal Improvement Fund contracted with the purchaser for reclamation and it is shown that the purchaser did in fact spend a large sum of money for that purpose. The act last cited made provision for their drainage independent of that provided in Chapter 6456, Acts of 1913, and such provision was followed.

The power of the legislature to tax the lands in question for drainage is not involved in this case. For the reasons stated it is our view that the omnibus clause relied on was insufficient to impose the drainage tax that since provision was made for their reclamation in the contract for sale, there is no theory under which the tax in question should be collected.

The judgment appealed from is therefore reversed.

Reversed.

THOMAS and SEBRING, JJ., concur.

ADAMS, J., concurs specially.

CHAPMAN, C. J., and BROWN, J., dissent.

BUFORD, J., disqualified.

ADAMS, J., concurring specially:

I concur in the judgment of reversal because these lands, being sovereign lands below the meander line of the Lake Okeechobee, never constituted any part of the area of the Drainage District. The question of whether the lands were reclaimed, at whose expense or whether there was or was not some appreciable or incidental benefits flowing to them by the district is therefore immaterial.