Mandamus proceeding by the State of Florida, on the relation of Tampa Electric Company, a corporation incorporated under the laws of the state of Florida, against Clarence M. Gay, as Comptroller of the State of Florida, to compel respondent to repay certain taxes collected by him.
Peremptory writ ordered.
The petitioner by mandamus seeks to coerce the respondent Comptroller to refund certain taxes paid by it. The petitioner alleges that:
"On the 27th day of September, 1946, in New York City, your petitioner issued 7,500 bonds of said initial series, each in the denomination of $1,000 and dated August 1, 1946, by delivering the same to Goldman, Sachs Co. for their account and for the several accounts of the other purchasers thereof, namely The First Boston *Page 226 
Corporation, Salomen Bros. Hutzler, Kidder, Peabody Co., W.C. Langley Co., Riter Co. and White, Weld Co., and then and there received from said purchasers certified or bank cashier's checks payable in New York Clearing House funds, to the order of your petitioner, aggregating $7,436,875.01, which constituted payment in full of the purchase price of said bonds * * *."
And that thereafter:
"On the 10th day of February, 1948, in New York City your petitioner issued 6,000 bonds of a new series, to be designated "First Mortgage Bonds, 3% Series due 1978," each in the denomination of $1,000 and dated January 1, 1948, by delivering the same to Goldman, Sachs Co. for their account and for the several accounts of the other purchasers thereof, namely The First Boston Corporation, Salomon Bros. Hutzler and White, Weld Co., being four of the concerns which purchased the initial series, and then and there received from said purchasers certified or bank cashier's checks payable in New York Clearing House funds, to the order of your petitioner, aggregating $6,036,840.00, which constituted payment in full of the purchase price of said bonds * * *."
The bonds were secured by a mortgage on property in Florida to the "State Street Trust Company," of Massachusetts, and "First Savings Trust Company," of Tampa (a Florida corporation), as Trustees.
The petitioner also alleges that:
"On the day before the day the bonds were delivered, to-wit, on the 26th day of September, 1946, counterparts of said indenture of mortgage were presented to the respective clerks of the Circuit Courts of the Counties of Hillsborough, Polk, Pasco and Pinellas, for filing and recordation, and were by them duly filed and recorded among the records of their offices. Prior thereto, the respondent Comptroller's predecessor in office, the late J.M. Lee, who died October 6, 1946, had required as a prerequisite to such recordation payment to the respective tax collectors of said four counties of the intangible tax prescribed by the Florida legislature pursuant to Article IX, Section 1, of the Constitution of Florida, as amended in 1924 and 1944 [F.S.A.], and levied and assessed by Chapter 21943, Laws of 1943, (Section 199.11(3), Florida Statutes, as amended [F.S.A.]) upon said bonds as being class C intangible personal property as classified and defined by Chapter 22867, Laws of 1945, (Section 199.02(3), Florida Statutes, as amended [F.S.A.]), and said Comptroller had fixed the amount of such tax at $1,521.00, apportioned as follows: Hillsborough County, (93.28 per cent of the real property encumbered by the mortgage) $1,418.78, Polk County, (4.60 per cent) $69.97, Pasco County, (1.79 per cent) $27.23, Pinellas County, (.33 per cent) $5.02. Said tax was duly paid by your petitioner, as so required immediately before said mortgage indenture was presented for recordation."
That:
"On the day before the day the bonds of the new series were delivered, to-wit, on the 9th day of February, 1948, counterparts of said supplemental indenture were presented to the respective clerks of the Circuit Courts of the Counties of Hillsborough, Polk, Pasco and Pinellas, for filing and recordation, and were by them duly filed and recorded among the records of their offices. Prior thereto, the respondent Clarence M. Gay, who was then and now is the duly constituted and acting Comptroller of the State of Florida, had required, as a prerequisite to such recordation, payment to the respective tax collectors of said four counties of the aforesaid intangible tax upon said bonds of the new series as being class C intangible personal property as aforesaid, and had fixed the amount of such tax at $1,216.23, apportioned among the said four counties in the same proportions as used for the tax on the bonds of the initial series, and said tax was duly paid by your petitioner, as so required, immediately before said supplemental indenture was presented for recordation, $1,134.50 being paid in Hillsborough County, $55.95 in Polk County, $21.77 in Pasco County and $4.01 in Pinellas County."
That:
"Subsequent to the payment of said taxes and prior to the filing of this petition, *Page 227 
your petitioner demanded of the respondent that he refund to it the money it paid in payment of the aforesaid taxes when no such taxes were due, as he is required to do by Section 199.31 of the Florida Statutes, as amended, F.S.A., but respondent refused and still refuses to make such refund."
The respondent's answer contained the following:
"Further answering said paragraph 4, respondent says that the payment of the tax as alleged in said paragraph was made on the 26th day of September, 1946, and that the relator did not, at any time prior to the expiration of one year after the claim for refund asserted accrued, file application for refund of the amount of said tax with the Comptroller of the State of Florida as required by statute. Wherefore, relator is barred of the right of refund thereof."
Section 199.31, F.S. 1941, F.S.A., as amended by Ch. 22867, Acts of 1945, F.S.A. § 199.31, appropriated the proceeds of the Intangible Tax Fund as follows:
"(5) After all of the above amounts have been paid there is hereby appropriated annually out of the intangible tax fund:
"(a) Seventy-five per cent of the net fund to the general revenue fund of the State of Florida, and
"(b) Twenty-five per cent of the net fund to each county in proportion to the net amount of intangible personal property taxes received from the respective several counties, and such money shall be paid to the board of county commissioners of each county for use by the board for county purposes. As amended, Laws 1943, c. 21943, § 3; Laws 1945, c. 22867, § 10." Sec. 199.31(5) (a), (b), F.S. 1941, F.S.A., Cum. Supp.
Section 199.31, supra, authorized and directed refunds from the Intangible Tax Fund as follows:
"(3) When money has been paid into the intangible tax fund in payment of any intangible personal property taxes, whether payment was made voluntarily or involuntarily, the comptroller is authorized and directed to refund to the person who paid same, or to his heirs, personal representatives or assigns:
"(a) Any overpayment;
"(b) Payment where no tax was due; and
"(c) Where a bona fide controversy exists between the tax collector and the taxpayer as to the liability of the taxpayer for the payment of the tax claimed to be due; the taxpayer may pay the amount claimed by the tax collector to be due and if it is finally adjudged by a court of competent jurisdiction that the taxpayer was not liable for the payment of taxes, or any part thereof, the comptroller shall make such refund as the court may direct. Except when made pursuant to an order of a court of competent jurisdiction, no refund of taxes shall be made by the comptroller unless the assessor of the county in which said assessment was made shall have approved such refund in writing and filed a copy of such approval with the comptroller. Each refund shall be charged against the taxes collected from the county of the residence of the taxpayer to whom the refund is made and shall be considered in arriving at the amount of money to be received by the county. There is hereby appropriated annually, out of funds coming into the comptroller's hands under the provisions of this chapter, an amount necessary to make such refunds." Ib., (3) (a), (b), (c).
In 1943 it was provided by law as follows:
"(1) The comptroller of the State of Florida may refund to the person who paid same, or his heirs, personal representatives or assigns, any moneys paid into the state treasury which constitutes:
"(a) An overpayment of any tax, license or account due;
"(b) A payment where no tax, license or account is due; and
"(c) Any payment made into the state treasury in error; and if any such payment has been credited to an appropriation, such appropriation shall at the time of making any such refund, be charged therewith. There are appropriated from the proper respective funds from time to time such sums as may be necessary for such refunds. *Page 228 
"(2) Application for refunds as provided by this section shall be filed with the comptroller within one year after the right to such refund shall have accrued else such right shall be barred and such application shall be on a form to be prescribed by the comptroller and shall be sworn to and supplemented with such additional proof as is necessary to establish such claim; provided, that if the right to refund shall have accrued prior to June 10, 1943, then such claimant shall have the period of one year from said date to file such claim; provided, such claim is not otherwise barred under the laws of this state. Laws 1943, c. 22008, § 1." Sec. 215.26(1) (a), (b), (c), (2), F.S. 1941, F.S.A., (Cum.Supp.)
One of the questions presented is whether the quoted statutory limitations on non-claim as contained in Section 215.26, supra, are applicable against petitioner and available to the Comptroller. If not, there is no limitation of non-claim under the circumstances presented.
The limitations of Section 215.26 have been held to avail the Comptroller against claims for refund of chain store taxes. See State ex rel. Butler's, Inc., v. C.M. Gay, 158 Fla. 164, 165, 27 So.2d 907; Id., 158 Fla. 500, 29 So.2d 246.
Section 215.26, supra, is not of a general application but one in relation to claims against the Comptroller. It appears that the petitioner's claim for the refund of taxes paid on or about September 26, 1946, with respect to the 1946 issue of bonds, is barred by the statute.
Relative to the taxes paid in 1948, the case of State ex rel. Seaboard Air Line Railway Co. v. Gay, Comptroller, Fla., 35 So.2d 403, is controlling.
The tax involved was paid because of the provisions of Chapter 199, F.S. 1941, F.S.A., which was enacted pursuant to Section 1 of Article IX of the Constitution, F.S.A. The constitutional provision is as follows:
"The Legislature shall provide for a uniform and equal rate of taxation, except that it may provide for special rate or rates on intangible property * * *; provided, that as to any obligations
secured by mortgage, deed of trust, or other lien, the Legislature may prescribe an intangible tax of not more than two (2) mills on the dollar, which shall be payable at the time such mortgage, deed of trust, or other lien is presented for recordation, said tax to be in lieu of all other intangible assessments on such obligations. * * *" (Italics supplied.)
The pertinent statutory provisions are:
"199.01 Definitions
"`Intangible personal property' is hereby defined as all personal property which is not in itself intrinsically valuable but which derives its chief value from that which it represents. `Taxpayers' shall mean a person, firm or corporation who or which shall be liable for taxes under this chapter for intangible personal property. Laws 1941, c. 20724, §§ 2, 4." Sec. 199.01, F.S. 1941, F.S.A.
"199.02 Classes of intangible personal property
"For the purpose of taxation intangible personal property is hereby divided into four classes to be known as class A, B, C, and D, intangible personal property. * * *
"(3) Class C intangible personal property is hereby defined as being all notes, bonds and other obligations bearing date subsequent to December 31, 1941, for payment of money which are secured by mortgage, deed of trust or other liens upon real property situated in Florida, provided that only that part of the value of the mortgage, deed of trust, or other lien, the real property of which is located within the state shall bear to the whole value of the real property described in said obligation shall be included." Sec. 199.02 and 199.02(3) Cum.Supp., F.S. 1941, F.S.A.
"199.11 Annual levy
"On and after January 1, 1942, there is hereby annually levied and assessed on all intangible personal property, to be assessed and collected as other taxes are assessed and collected and to be paid into the intangible tax fund of the State of Florida and apportioned therefrom as hereinafter set forth, the following tax:
"(1) On all class A intangible * * *.
"(2) On all class B intangible * * *. *Page 229 
"(3) On all class C intangible personal property three mills on the dollar of the taxable value of such class C intangible personal property, which taxable value shall be the principal amount of the indebtedness, evidenced by such obligation, which tax shall be due and payable when the mortgage, deed of trust or other lien is executed and shall be paid to the county tax collector before the mortgage, deed of trust or other lien securing such indebtedness is presented for recordation. Every person who shall take, receive or record any mortgage, deed of trust or other written specific lien in the nature of a mortgage upon real property situated in Florida shall pay the tax prescribed by this subsection in respect to the debt or obligation secured thereby, and in evidence thereof the tax collector, upon receiving payment thereof, shall place on such mortgage, deed of trust or the instrument evidencing such specific lien a notation showing the amount of tax levied by this subsection and received by him. * * *" Section 199.11(1), (2), (3), (Cum.Supp.) F.S. 1941, F.S.A.
The general rule of construction of taxation laws is as follows:
"Sec. 316. Strict or Liberal Construction. Although it is sometimes broadly stated either that tax laws are to be strictly construed, this apparent conflict of opinion can be reconciled if it is borne in mind that the correct rule appears to be that where the intent or meaning of tax statutes, or statutes levying taxes, is doubtful, they are, unless a contrary legislative intention appears, to be construed most strongly against the government and in favor of the taxpayer or citizen. Any doubts as to their meaning are to be resolved against the taxing authority and in favor of the taxpayer, or, as it is sometimes put, the person upon whom it is sought to impose the burden. * * *." 51 Am.Jur. 366-8, Taxation, Sec. 316.
The statutes involved provide for an ad valorem tax on intangible property in Florida or a tax on property held by those who are within the State or citizens of the State. It was not the intent of these statutes to tax or to authorize a tax on property without the State and held by those who are neither domiciled in nor citizens of the State. The sanction imposed as a condition to recording was not for the purpose of coercing payment of taxes on such property under the facts and circumstances of this case.
Since the bonds in question, issued in 1948, were issued to foreign corporations, and without the State, and since such foreign corporations have never become amenable to the laws of Florida for taxation purposes, the tax paid by relator to the several clerks of court was not lawfully exacted and should be refunded by the Comptroller in the sum of $1,216.23, and a peremptory writ is ordered issued for such relief.
ADAMS, C.J., and TERRELL, CHAPMAN, THOMAS, SEBRING, and HOBSON, JJ., concur. *Page 230