74 So.2d 560 (1954)
STATE ex rel. VICTOR CHEMICAL WORKS
v.
GAY, Comptroller.
Supreme Court of Florida, en Banc.
July 16, 1954.
Rehearing Denied September 28, 1954.
John M. Allison, George W. Ericksen & Macfarlane, Ferguson, Allison & Kelly, Tampa, for petitioner.
Richard W. Ervin, Atty. Gen., and Fred M. Burns, Asst. Atty. Gen., for respondent.
John T. Wigginton and Caldwell, Parker, Foster & Wigginton, Tallahassee, amici curiae.
MATHEWS, Justice.
This is a case of original jurisdiction. Alternative writ of mandamus issued. A *561 motion to quash the alternative writ was denied and a return to the alternative writ was filed. Thereafter, a motion for the issuance of the peremptory writ notwithstanding the return was filed. A re-argument, pursuant to a Petition Granted, was had.
From the pleadings in this cause it appears that the relator paid the use tax imposed by Chapter 26319, Laws of Florida, Acts of 1949, Extraordinary Session. The taxes paid by the relator were on various dates between December 19, 1949, and May 17, 1951. Claim for refund was filed with the Comptroller on July 25, 1953.
In the case of Thompson v. Intercounty Tel. & Tel. Co., Fla., 62 So.2d 16, we held that the tax imposed by the act in question was not due because it was invalid by reason of a defective title to the act. The defect in the title has now been cured by the enactment of Chapter 26484, Laws of Florida, Acts of 1951. The taxes paid by the relator and in question in this suit amounted to $5,261.68 and covered the period of time from November 1, 1949, and April 25, 1951. F.S. Section 215.26, F.S.A. is as follows:
"Repayment of funds paid into state treasury through error, etc.
"(1) The comptroller of the State of Florida may refund to the person who paid same, or his heirs, personal representatives or assigns, any moneys paid into the state treasury which constitutes:
"(a) An overpayment of any tax, license or account due;
"(b) A payment where no tax, license or account is due; and
"(c) Any payment made into the state treasury in error;
and if any such payment has been credited to an appropriation, such appropriation shall at the time of making any such refund, be charged therewith. There are appropriated from the proper respective funds from time to time such sums as may be necessary for such refunds.
"(2) Application for refunds as provided by this section shall be filed with the comptroller within one year after the right to such refund shall have accrued else such right shall be barred and such application shall be on a form to be prescribed by the comptroller and shall be sworn to and supplemented with such additional proof as is necessary to establish such claim; provided, that if the right to refund shall have accrued prior to June 10, 1943, then such claimant shall have the period of one year from said date to file such claim; provided, such claim is not otherwise barred under the laws of this state."
The relator insists that his right to a refund did not accrue until the final determination of the suit in the case of Thompson v. Intercounty Tel. & Tel. Co., supra, in which the relator was not a party. The respondent claims that the right to refund accrued at the time of the payment of such tax, irrespective of the time of the final determination of the legality of the tax in some other suit in which the relator was not a party.
It becomes important in this case to determine when the right to a refund "accrued". In Orlando Orange Groves Co. v. Hale, 119 Fla. 159, 161 So. 284, the Court held that the word "accrue" meant to come into existence as an enforceable claim; to vest a right; as a cause of action has accrued when the right to sue has become vested.
In the case of Berger v. Jackson, 156 Fla. 251, 23 So.2d 265, the Court held that an action accrued when an action could be instituted thereon and there was some person capable of being sued.
In the case of Commonwealth v. Sammons, 180 Ky. 403, 202 S.W. 885, the Kentucky Court held that a cause of action accrues when the party has the right and *562 capacity to sue and is not suspended until he ascertains that he has a cause of action.
F.S. Section 215.26, F.S.A., is not, strictly speaking, a statute of limitations but is more in the nature of a statute of non-claim. The application for refund is required to be made within one year after the right to such refund shall have accrued and if no application has been made, the right to any refund shall be barred.
In dealing with statutes such as that involved in this case it is essential that we bear in mind that unless there is some statute which authorizes a refund or the filing of a claim for refund, money cannot be refunded or recovered once it has been paid although levied under the authority of an unconstitutional statute. 51 Am. Jur., Taxation, Sec. 1167. "The recovery of illegally exacted taxes is solely a matter of governmental grace. In the absence of an authoritative statute, taxes voluntarily, although erroneously, paid cannot be voluntarily refunded, although there may be justice in the claim. * * * Sometimes conditions are annexed to the right to a refund whch must be complied with, such as the making of the claim within a specified time. It seems that defects in the form of sufficiency of the claim may be waived, but the statutory requirement that the claim be filed in the prescribed time may not be waived." 51 Am.Jur., Taxation, Sec. 1179.
In short it is the universal rule that a statute of non-claim runs from the time the taxes are paid and is not postponed until the legality of the tax has been judicially determined. 84 C.J.S., Taxation, § 639(c).
The Florida Probate Law and the interpretations of this Court with reference thereto are to some extent analogous to the question presented in this case. F.S. Section 733.16, F.S.A., provides that any claim or demand not filed within eight months from the time of the first publication of notice to creditors shall be void and that no cause of action shall survive the death of the person unless such is filed in the manner and time fixed by the statute.
In the case of Bedenbaugh v. Lawrence, 141 Fla. 341, 193 So. 74, this Court held that as a matter of public policy in this state the estates of decedents should be speedily and finally determined. The same reasoning applies with reference to taxes. A refund is a matter of grace and if the statute of non-claim is not complied with, the statute becomes an effective bar in law and in equity.
In the case of In re Woods' Estate, 133 Fla. 730, 183 So. 10, 12, 117 A.L.R. 1202, the decedent had executed a promissory note payable on or before thirty days after date. The note was dated January 6, 1926. The maker died on October 10, 1934. The first publication of notice to creditors was on November 5, 1934. On October 15, 1935, the payee of the note filed his claim in the County Judge's Court based upon the promissory note. On November 8, 1935, an order was entered by the County Judge's Court striking from the files and records the claim so filed. The claimant appealed to the Circuit Court where the order was affirmed, and from that order of affirmance an appeal was taken to this Court. On November 5, 1935, suit was filed in the Circuit Court on the promissory note. The administratrix pleaded the eight months statute of non-claim to which a demurrer was filed. The Circuit Judge overruled the demurrer. The issues raised in the two suits were the same; to-wit, the validity of the statute of non-claim. In discussing the issues involved in that case this Court said:
"* * * There is a wide distinction between general statutes of limitation and the so-called short, special, non-claim or administrative statute of limitations under which claims against estates of deceased persons must be presented, and in some instances prosecuted, within a given time after the administration of an estate begins and notice is published for the benefit of creditors. Not only is the purpose of these nonclaim statutes different, but *563 the event which starts the period to running and makes them effective is different. General statutes of limitation begin to run when the cause of action arises, but nonclaim statutes do not become effective except as to claims against decedent's estates and only after an administrator has been appointed, and letters of administration issued and notice given to the creditors as required by the statute. Our court has recognized a distinction between these two classes of statutes in the case of Bradford v. Shine, 13 Fla. 393, 7 Am.Rep. 239. "In the case of Brooks v. Federal Land Bank of Columbia, 106 Fla. 412, 143 So. 749, at page 753, Justice Ellis, speaking for the Court, rightly said:
"`A statute of nonclaim while partaking of the nature of a statute of limitations is not wholly such. It constitutes part of the procedure of the court, the orderly, expeditious, and exact settlement of the estates of decedents, and constitutes part of the procedure which courts must observe in the settlement of estates of deceased persons, and, where no exemption from the provisions of a statute exist, the court is powerless to create one. If such were not the case, the settlement of an estate might be deferred indefinitely and heirs and legatees, the rightful owners of the property of the estate, or beneficiaries of the will of the decedent, kept out of the enjoyment of their possessions and deprived of the benefits secured to them by the laws of the state for such unreasonable time as to practically deprive them of their property.'
* * * * * *
"* * * the Court is powerless to change the words and clear meaning of the nonclaim statute, which provides that `any such claim or demand not so filed within eight months from the time of the first publication of the notice to creditors shall be void.' As was said in the case of Brooks v. Federal Land Bank of Columbia, supra, `where no exception from the provisions of the statute exist, the court is powerless to create one.' The contention then that equity and good conscience require that the appellant not lose his claim, while very appealing, does not authorize us to change the statute, which allows only eight months from the first publication of notice to creditors within which to file claims, and expressly provides that claims not filed within such eight-month periods shall be `void'."
The two Butler cases (State ex rel. Butler's, Inc., v. Gay, 158 Fla. 164, 27 So.2d 907, and State ex rel. Butler's, Inc., v. Gay, 158 Fla. 500, 29 So.2d 246, 247) appear to have settled the question by holding that failure to file written claim, sworn to on a form to be prescribed by the Comptroller, within a year from the date of the payment barred the claim, although this Court also held that the tax payment was not such as to come within the refund statute.
In the first case the Court held the taxpayer was correct in paying his tax on the basis of the inventory value at the end of its fiscal year and the Comptroller was wrong in requiring an additional payment based on the inventory value at the end of the calendar year. Although the Comptroller denied the taxpayer's compliance with the refund statute, it appears that sufficient facts were not presented and the Court, after making its announcement as to the law, left the question to be worked out between the parties. In the second case it appears that additional taxes were paid September 27, 1945 and a verbal claim was made in August, 1946 but a written claim was not made until October 28, 1946. The Comptroller contested the claim on the ground that it was not filed with him within one year after the right to such refund shall have accrued. This Court then held: "* * * it appears that the relator's [taxpayer's] rights have been barred by the limitations provided by Section 215.26, F.S.A." A motion for peremptory writ was denied and the respondent discharged in that case. The effect of the opinion in *564 this second Butler case was that the right to a refund of taxes illegally paid accrued when the taxes were paid.
The case of State ex rel. Tampa Electric Co. v. Gay, Fla., 40 So.2d 225, 227, appears to be the most recent holding by this Court that the right to refund is barred under F.S. Section 215.26, F.S.A., unless a claim is filed with the Comptroller within one year from the date of payment. The case involved two payments of intangible property tax, the first being made on September 26, 1946, and the second on February 9, 1948. The Comptroller's answer contained the following:
"`Further answering said paragraph 4, respondent says that the payment of the tax as alleged in said paragraph was made on the 26th day of September, 1946, and that the relator did not, at any time prior to the expiration of one year after the claim for refund asserted accrued, file application for refund of the amount of said tax with the Comptroller of the State of Florida as required by statute. Wherefore, relator is barred of the right of refund thereof.'"
This Court said:
"One of the questions presented is whether the quoted statutory limitations on nonclaim as contained in Section 215.26, supra, are applicable against petitioner and available to the Comptroller. If not, there is no limitation of non-claim under the circumstances presented.
"The limitations of Section 215.26 have been held to avail the Comptroller against claims for refund of chain store taxes. See State ex rel. Butler's, Inc., v. Gay, 158 Fla. 164, 165, 27 So.2d 907; Id., 158 Fla. 500, 29 So.2d 246.
"Section 215.26, supra, is not of a general application but one in relation to claims against the Comptroller. It appears that the petitioner's claim for the refund of taxes paid on or about September 26, 1946, with respect to the 1946 issue of bonds, is barred by the statute."
The net result of the opinion was to apply the non-claim statute to the payment made on September 26, 1946, with respect to the 1946 taxes and bar the claim because no claim for refund had been filed as required by F.S. Section 215.26, F.S.A., and to order a refund of a tax payment made on February 9, 1948. All of this was in the same suit. Even though the taxes paid on 1946 were illegal, no claim for refund was made within one year and the action was barred. Claim was made for the taxes paid February 9, 1948, within the year and the action was not barred.
It is strongly urged by the relator that he could not file claim for refund because he did not know that his right to do so had accrued until there was a final determination of the legality of the tax by this Court. This contention is without merit.
In the case of Trimmer v. City of Rochester, 134 N.Y. 76, 31 N.E. 255, the New York Court of Appeals had this question before it. It was urged in that case that the cause of action did not accrue until the tax assessment was set aside or held invalid. The New York Court of Appeals held that such contention might be true if it had been necessary to bring two separate actions, one to vacate the assessment and having succeeded in that suit, to bring a second to recover the money involuntarily paid, but that two separate suits were unnecessary and the entire matter could be settled in one proceeding.
There have been many suits in Florida to determine the validity of a tax and to direct the making of a refund by the Comptroller under F.S. Section 215.26, F.S.A., such as State ex rel. Tampa Electric Co. v. Gay, supra; Walgreen Drug Stores Co. v. Lee, 158 Fla. 260, 28 So.2d 535; State ex rel. Seaboard Air Line R. Co. v. Gay, 160 Fla. 445, 35 So.2d 403.
The taxpayer had the right to pay the tax and then seek refund after it *565 was paid and bring a mandamus action to have the validity of the statute tested and to direct a refund of the taxes paid. The taxpayer was not required to wait until some stranger to him brought a proceeding to test the validity of the statute. It could have brought a single proceeding to determine the validity of the tax and for a refund. It knew that the tax had been imposed. It knew that it had paid the tax. It knew that it had the right to file an application for refund and if brought in time, a mandamus proceeding is one of the correct proceedings to determine the validity of the tax. It failed to file any claim or take any action within one year of the time of the payment which is the time of the accrual of the right in this case and the claim involved is now barred by F.S. Section 215.26, F.S.A.
The return of the respondent, alleging that F.S. Section 215.26, F.S.A. which required the application for refund to be filed within one year after the right to such refund shall have "accrued" was not complied with, is a good and sufficient return. Having failed to comply with the statute, "such right shall be barred". The motion for the issuance of a peremptory writ, the return notwithstanding, should be, and the same is hereby, denied, and the respondent be, and he is hereby discharged.
It is so ordered.
ROBERTS, C.J., and TERRELL, SEBRING and THOMAS, JJ., concur.
HOBSON and DREW, JJ., dissent.
HOBSON, Justice (dissenting).
A consideration of the majority opinion leads to the inescapable inference that the able jurist who is its author gave much thought to it and expended a great deal of research effort in its preparation. The opinion is indeed a fine dissertation upon the subject at hand. I do not desire to precipitate or be a party to a logomachy nor do I wish to be classified as an intransigent but I cannot concur in the opinion prepared for the majority because in my judgment the conclusion reached therein results in manifest injustice. It may be that the majority has made a legally sound and correct ruling. However, with the undisputed facts of this case in mind, this writer is forced to take a contrary view and is constrained to observe that in his opinion the conclusion reached by the majority tends to lend a degree of verity to the expression attributed to many laymen over the years that "it is all law and no justice".
The only authority which is cited in the controlling opinion which may be said to be directly in point is the case of State ex rel. Tampa Electric Co. v. Gay, Fla., 40 So.2d 225, 228. An examination of our opinion in that case shows that we did little more than make the bald statement: "It appears that the petitioner's claim for the refund of taxes paid on or about September 26, 1946, with respect to the 1946 issue of bonds, is barred by the statute" in disposing of the question whether the statutory limitation of non-claim contained in F.S. Section 215.26(2), Florida Statutes Annotated, is applicable "against petitioner and available to the Comptroller".
In the Tampa Electric Co. case the statute which provides for the tax was not declared to be unconstitutional, but it was there held only that the statute did not contemplate a tax upon property "without the State and held by those who are neither domiciled in nor citizens of the State". This was a matter of judicial construction of a valid statute. But here we are confronted with an attempt to secure a refund of taxes paid under a law which, subsequent to the payment and after the period of twelve months from the date the taxes were paid had expired, was by this court declared unconstitutional. There is a vast difference between construction of a valid law and a declaration of unconstitutionality.
It is evident upon a casual reading of the opinion in the Tampa Electric Co. case that consideration was given therein primarily to the language of the statute. That the *566 query, when did the right to refund accrue, was decided cannot be gleaned therefrom except by inference or necessary implication. Be that as it may, there is a real, an obvious, and I think a controlling, distinction between that case and the one at bar. In the Tampa Electric case the claimant made the initial error of misconstruing a valid statute. In the instant suit the original, indeed, the sine qua non, error was made by the State in enacting an unconstitutional law.
The plight in which claimant finds itself as a direct result of the State's error is not dissimilar to a situation wherein one might enter into a paving contract with a governmental unit such as a municipality or a county, and after furnishing improvements thereunder and receiving certificates in payment therefor have a court determine that the legislative act pursuant to which the certificates were issued is unconstitutional. The question presented herein to my mind is analogous to one which we decided in the case of Gulf Life Ins. Co. v. Hillsborough County, 129 Fla. 98, 176 So. 72, wherein we held that under such circumstances a contractor might sue the governmental unit upon the theory of implied contract and that our statute of limitations would not bar such a suit unless the statutory period had expired before suit was instituted, when calculated upon the basis of having begun to run at the time of the judicial determination that the law under which the certificates were issued was invalid. Moreover, in Nuveen v. City of Quincy, 115 Fla. 510, 156 So. 153, 94 A.L.R. 600, we discussed the question: When does the three year statute of limitations begin to run against the maintenance of a bondholder's action in assumpsit in a situation wherein the bonds have been declared invalid? In that case we recognized the proposition that under such circumstances the statute begins to run from the date upon which the judgment declaring the bonds invalid becomes final. Such reasoning squares with my concept of fair and evenhanded justice. It should be applied herein.
This payment cannot be classified for any reason as an over-payment or payment when a tax was not due under a valid law. Claimant's demand is not strictly speaking a request for a refund but is one for a return of monies handed over to the State under the coercion of an unconstitutional law which gives to the collector (Comptroller) unprecedented authority to enforce its provisions. It is unrealistic to say that payment of the use tax attempted to be authorized by that part of the General Revenue Act of 1949 which was declared unconstitutional, was voluntary.
I am persuaded to the view expressed by the Mississippi Supreme Court in the case of Tuttle v. Everett, 51 Miss. 27,
"It is insisted on the part of the plaintiff in error that the taxes were voluntarily paid, and for that reason cannot be recovered back from the tax collector. This would be a correct legal proposition, where the property is properly taxable, and there was a mere irregularity in the levy or collection of the tax. But where the assessment and levy of the tax is illegal and void, the tax paid to the collector may be recovered back by the tax payer from the tax collector, whilst the same remains in his hands. This is in accordance with reason, principle and authority. Blackwell in his valuable work on Tax Titles says: `Where a county or other local corporation levy a tax which is illegal, and the citizen pays the tax to one who has a formal authority to collect it, the payment is not voluntary but compulsive, * *'".
See also 51 Am.Jur., Sec. 1187, from which, at least under the circumstances of the present case, I quote with approval:
"Moreover, a payment of taxes to a collector who has authority and duty to proceed at once to enforce payment by levy and sale is to be regarded as an involuntary payment, even though seizure and sale had not been made, attempted, or even threatened."
*567 If ever a law existed which by its very terms forcefully threatens seizure and sale and empowers the collector effectively to put a delinquent taxpayer out of business, the General Revenue Act of 1949 is that law.
As observed in the majority opinion, the real question before the court is: When did the right to the refund sought herein accrue? Specifically the query now presented may appropriately be posed in the following form: Does the language "after the right to such refund shall have accrued" disclose a legislative intent that the application for refund must have been made within one year after the date upon which the tax was paid or within one year after the day on which the tax involved herein was held void by thie court, which action gave rise to the right to a refund?
It is my considered judgment that when a taxpayer assumes the role of a good, conscientious, law-abiding citizen, pays a tax under a law which is presumptively valid and thereafter the court of last resort decides that it is unconstitutional, such taxpayer should not be held barred from securing the return of monies so paid by application of a general statute of non-claim. I believe that the right to such refund did not accrue until the act, under which the tax payment was made, was by this court declared unconstitutional and thereby rendered inoperative. Assuredly the State should encourage, rather than discourage, conduct which exemplifies good citizenship and should not be permitted to retain monies exacted under the guise of a presumptively valid tax law. Indeed, we have on more than one occasion observed when discussing the subject of fair dealing that the State should set the example. See State ex rel. Wadkins v. Owens, Fla., 62 So.2d 403 and Gay v. Southern Builders, Inc., Fla., 66 So.2d 499. And we have applied the same principle to political subdivisions of the State. In Webb v. Hillsborough County, 128 Fla. 471, 175 So. 874, 878, we quoted with approval the language of Mr. Chief Justice Field of California [Argenti v. City of San Francisco, 16 Cal. 255], later of the Supreme Court of the United States, as follows:
"`If the city obtain the money of another by mistake, or without authority of law, it is her duty to refund it  not from any contract entered into by her on the subject, but from the general obligation to do justice which binds all persons, whether natural or artificial.'"
The law condemns unjust enrichment in matters of private litigation, and I cannot see the justice of allowing it simply because the State, rather than an individual, has been, as a consequence of its own initial illegal action, unjustly enriched.
It is no answer to my mind to suggest that claimant might secure relief by legislative action if it sees fit to seek it. If, as I verily believe, claimant has a right to the return of its property unlawfully possessed by the State, the courts should enforce such right and not leave claimant with nothing more certain than the hope of obtaining special legislative action.
As I comprehend it, the crux of this case is not whether the tax was voluntarily or involuntarily paid, for regardless which view is taken on that subject and also regardless of the somewhat superficial consideration and precipitate determination of the important question posed in the Tampa Electric Co. case, the only proper method of finding the correct answer to the controlling question set forth above is, if possible, to glean and expound the legislative intent which motivated the use of the language "after the right to such refund shall have accrued".
It is significant that the legislature, although it could readily have done so, failed to use the clear, unambiguous and direct phraseology "within one year from the date upon which the tax is paid". Therefore, I am convinced that the language which it did use was designedly employed for the very purpose of providing for refund in just such a case as this. The legislature knew that if that section of *568 Chapter 26319, Laws of Florida, Acts of 1949, Extraordinary Session, which imposed the tax in question should be declared unconstitutional no claimant, prior to such judicial determination, would for that reason have a right to, and that the Comptroller would not until such court action have the power or authority to make, a refund.
Finally I am constrained to observe that if the legislative intent cannot be determined with certainty because the language employed in the legislative act is susceptible of more than one meaning, it becomes the duty of the court under established law to adopt that interpretation or construction which is most favorable to the taxpayer. Obviously the least that can be said is that the clause in Section 215.26, supra, under consideration herein is susceptible of two meanings. Consequently I am firmly convinced that regardless of a difference of opinion on the question of legislative intent, we have no alternative. We must conclude that the words "after the right to such refund shall have accrued" should be construed under the facts of this case to mean the day upon which the tax in question was held void, which ruling initially gave rise to a right to the refund sought herein. In the case of Walgreen Drug Stores Co. v. Lee, 158 Fla. 260, 28 So.2d 535, 536, we said:
"Our conclusion on this point is also supported by the well settled rule of tax statute construction that, if the text of the act does not reveal with certainty the intent of the Legislature and it is susceptible of two meanings, that meaning most favorable to the taxpayer should be adopted."
To the same effect, see Culbreath v. Reid, Fla., 65 So.2d 556; Florida National Bank of Jacksonville v. Simpson, Fla., 59 So.2d 751; Overstreet v. Ty-Tan, Inc., Fla., 48 So.2d 158; State ex rel. Tampa Electric Co. v. Gay, Fla., supra, 40 So.2d 225; De Vore v. Gay, Fla., 39 So.2d 796; Peninsular Telephone Co. v. City of Clearwater, Fla., 39 So.2d 473; State ex rel. Seaboard Air Line R. Co. v. Gay, 160 Fla. 445, 35 So.2d 403; Certain Lots Upon Which Taxes are Delinquent v. Town of Monticello, 159 Fla. 134, 31 So.2d 905; Walgreen Drug Stores Co. v. Lee, 158 Fla. 260, 28 So.2d 535, supra; Jefferson Realty Co. v. Board of Com'rs of Everglades Drainage Dist., 156 Fla. 141, 23 So.2d 274; Florida Industrial Commission v. Growers Equipment Co., 152 Fla. 595, 12 So.2d 889; Lee v. Walgreen Drug Stores Co., 151 Fla. 648, 10 So.2d 314; Cunningham v. Stefanidi, 144 Fla. 214, 197 So. 722; Lovett v. Lee, 141 Fla. 395, 193 So. 538; Lee v. Quincy State Bank, 127 Fla. 765, 173 So. 909; City of Pensacola v. Lawrence, 126 Fla. 830, 171 So. 793; Metropolis Pub. Co. v. Lee, 126 Fla. 107, 170 So. 442; Lee v. Wood, 126 Fla. 104, 170 So. 433; and State ex rel. Kurz v. Lee, 121 Fla. 360, 163 So. 859. See also 51 Am.Jur. 366-368, Sec. 316.
I can envisage cases wherein it might properly be determined that the right to a refund accrued on the day upon which the tax was paid. Indeed such determination might appropriately be made in most cases but had the legislature intended such interpretation to be given to its language in all cases it, as aforestated, could have so easily resolved all doubt by use of the words "within one year from the date upon which the tax is paid".
Simple justice will not permit me to concur in the judgment of the majority and I do not believe that a proper interpretation of the law requires such a ruling. God forbid that our courts shall ever lose sight of the underlying reason for their existence in this democratic society of which we are so justly proud.
DREW, J., concurs.