QUESTIONS: 1. In view of the fact that Ch. 75-22(15), Laws of Florida, transferred the Internal Improvement Trust Fund to the Land Acquisition Trust Fund, created by s. 375.041, F. S., may refunds of moneys paid as the sales price of fill materials be made from the Land Acquisition Trust Fund when the permit to dredge and fill was granted by the Trustees of the Internal Improvement Trust Fund? 2. In view of the fact that Ch. 75-22(15), Laws of Florida, transferred the Internal Improvement Trust Fund to the Land Acquisition Trust Fund, created by s. 375.041, F. S., may refunds of moneys paid as the sales price of fill materials be made from the Land Acquisition Trust Fund when the permit to dredge and fill was never granted by the Trustees of the Internal Improvement Trust Fund due to cancellation or withdrawal of the application?
SUMMARY: Refunds of moneys paid as the sales price of fill materials by applicants for dredge and fill permits who have received the permits may not be refunded because such sales are consummated, fully executed contracts selling the fill material and which are not contingent upon applicants actually dredging the fill. As such, there is no basis for a claim for refund for a transaction fully completed, and likewise no statutory authorization exists for same. If the application for a dredge and fill permit is canceled or withdrawn prior to issuance of the permit, moneys deposited with the application for payment of fill material may be refunded by the Comptroller from the Land Acquisition Trust Fund pursuant to ss. 215.26, 215.32, and375.041, F. S., because such payments are made on an account not legally due, but only conditionally due, per s. 215.26(1)(b). The right to the refund accrues when the claimant has a right to recover the moneys paid or, in this instance, upon cancellation or withdrawal of the application for the dredge and fill permit. Your first question is answered in the negative and the second question in the affirmative as hereinafter qualified. AS TO QUESTION 1: The Trustees of the Internal Improvement Trust Fund, as owners of state lands, were at all times material herein empowered to manage, control, and dispose of state lands, including sales of fill material. See s. 253.03, F. S.; Rules 18-2.071, 18-2.08, and 18- 2.09, Florida Administrative Code (repealed); and AGO 071-68. The proceeds from such sales of fill material were deposited in the Internal Improvement Trust Fund to be strictly applied and expended according to the provisions of Ch. 253, F. S. See ss.253.01 and 253.015; cf. s. 253.031(4).
Pursuant to s. 15, Ch. 75-22, Laws of Florida, the uncommitted fund of balance of the Internal Improvement Trust Fund as of July 1, 1975, and all revenues subsequently accruing from sources now designated by law for deposit in such fund shall be deposited in the Land Acquisition Trust Fund created by s. 375.041, F. S., to be used in accordance with Ch. 375, F. S. Section 375.041 creates the lastnamed trust fund to be administered by the Division of Recreation and Parks of the Department of Natural Resources. Specifically, as to sales of fill material to fill private upland or to fill submerged land in private ownership or under contract to purchase, Rules 18-2.071 and 18-2.08, supra, required such fill material to be "purchased under application": 18-2.071 MATERIAL FROM SOVEREIGNTY LANDS TO FILL SUBMERGED LAND IN PRIVATE OWNERSHIP, OR UNDER CONTRACT TO PURCHASE, MUST BE PURCHASED. Material from sovereignty lands for filling privately and publicly-owned property, or under contract to purchase, must be purchased under application, which includes: * * * * * 18-2.08 MATERIAL FROM SOVEREIGNTY LAND TO FILL UPLAND MUST BE PURCHASED. Material from sovereignty lands for filling private upland must be purchased under application which includes . . . . (Emphasis supplied.) Thus, the above-quoted regulations require the applicant to actually purchase the fill material. Cf. s.253.12(8), F. S., and AGO 071-68. Inasmuch as the relationship between the trustees as owners of state lands and the applicant seeking to purchase fill material from stateowned lands is contractual, it is apparent that the applicant has in fact and in law actually purchased the fill material, the subject of the application to dredge and fill. Although the above-cited regulations, by their literal terms, appear to indicate that the purchase takes place "under application" or at the time of the application for the dredge and fill permit, nevertheless, the applicant receives the legal, and inferentially the contractual, right to dredge the fill material only upon the grant of the dredge and fill permit. I am therefore of the view that the purchase of the fill material has not occurred until such time as the grant of the dredge and fill permit. In the instant case wherein the application with deposit of funds was made and the dredge and fill permit granted, it is evident that the fill material has been sold to the applicant pursuant to a completed transaction or contract. I find no indication that the sale was contingent upon the applicant actually dredging the specified fill material or any other occurrence. There can, accordingly, be no basis for a claim for refund since the contract selling the fill material has been executed in full by both parties with no obligations remaining thereunder. Likewise, I find no statutory direction or authorization allowing refunds by the trustees for fill materials sold by the state in a transaction completed in all particulars. Cf. s. 253.29, F. S., as to refunds of moneys paid for lands purchased from the state when title fails. Thus no refunds may be allowed for sales of fill material to fill private upland or to fill submerged land in private ownership or under contract to purchase when the permit to dredge and fill was granted by the Trustees of the Internal Improvement Trust Fund. AS TO QUESTION 2: As discussed in question 1, the sale of the fill material does not take place until such time as the permit to dredge and fill is granted. Since you have specified in question 2 that the application for the permit was withdrawn and the permit never granted, it appears that the moneys deposited with the application and now reposing in the Land Acquisition Trust Fund may be the proper subject of a refund claim subject to the legislative prerogative. Cf. State v. Gay, 74 So.2d 560 (Fla. 1954). Section 375.041(1), F. S., provides for the disposition of such moneys as deposited in the Land Acquisition Trust Fund: All moneys so deposited into the Land Acquisition Trust Fund shall be trust funds for the uses and purposes herein set forth, within the meaning of s. 215.32(1)(b) and such moneys shall not become or be commingled with the General Revenue Fund of the state . . . . As above quoted, the Land Acquisition Trust Fund is denominated as a s. 215.32 trust fund. Section 215.32, F. S., provides that moneys received by the state are to be deposited into the State Treasury in the various named funds including the trust funds. Said section further provides: (b)1. The trust funds shall consist of moneys received by the state which under law or under trust agreement are segregated for a purpose authorized by law. . . . * * * * * 3. All such moneys are hereby appropriated for the purpose for which they were received, to be expended in accordance with the law or trust agreement under which they were received, subject always to other applicable laws relating to the deposit or expenditure of moneys in the State Treasury. (Emphasis supplied.) Accordingly, s.215.26, F. S., which controls claims for refunds of payments into the State Treasury, is applicable: (1) The Comptroller of the state may refund to the person who paid same, or his heirs, personal representatives or assigns, any moneys paid into the State Treasury which constitute: (a) An overpayment of any tax, license or account due; (b) A payment where no tax, license or account is due; * * * * * and if any such payment has been credited to an appropriation, such appropriation shall at the time of making any such refund, be charged therewith. There are appropriated from the proper respective funds from time to time such sums as may be necessary for such refunds. (Emphasis supplied.) Assuming the permit to dredge and fill was not granted by the trustees and the application for same was canceled or withdrawn by the parties, then the payment for the fill material would appear to be a payment where no account is due within the meaning of s. 215.26, supra, and therefore eligible for refund from the Land Acquisition Trust Fund under the conditions stated therein. Until the permit was issued, the payment for the fill was, in my opinion, in legal effect a payment of an account not in law due, but only conditionally due, subject to the grant of the permit. Cf. AGO 075-293. Hence, the moneys so deposited were subject to a claim for refund pursuant to s. 215.26, supra. I direct your attention to the provisions of said section which require applications for such refunds to be submitted to the Comptroller within 3 years after the right to such refund accrues, else such right shall be barred. The right to the refund accrues when the claimant has a right to recover the moneys paid or, in this instance, upon cancellation or withdrawal of the application for the dredge and fill permit. Of course the Comptroller likewise must authorize the refund. See s. 4, Art. IV, State Const.; s.17.03(1), F. S.; and Florida Development Commission v. Dickinson,229 So.2d 6 (1 D.C.A. Fla., 1969), cert. denied, 237 So.2d 530
(Fla. 1970).