460 So.2d 399 (1984)
ST. JOE PAPER COMPANY, Appellant,
v.
DEPARTMENT OF REVENUE, Appellee.
No. AY-114.
District Court of Appeal of Florida, First District.
November 9, 1984.
Rehearing Denied January 3, 1985.
*400 John S. Ball and James H. Sheehan of Sheehan & Ball, Jacksonville, for appellant.
Jim Smith, Atty. Gen., Barbara Staros Harmon, Asst. Atty. Gen., for appellee.
MILLS, Judge.
St. Joe Paper Company (St. Joe) appeals from a final order holding that it is not entitled to interest on the overpayment of its corporate income tax for 1976 under Section 214.14, Florida Statutes (1983). We reverse.
St. Joe filed its corporate income tax return for calendar year 1976 with the Department of Revenue (Department) on 23 September 1977. The company was subsequently audited by the Internal Revenue Service (IRS) for calendar years 1972 through 1977. This audit resulted in adjustments to St. Joe's taxable income, revealing an overpayment of its corporate tax in 1976 and underpayments of the tax for each year from 1972 through 1975 and 1977. Section 220.23(2), Florida Statutes (1983), requires a taxpayer to notify the Department when an IRS audit results in adjustment of income subject to the corporate tax. St.Joe filed amended returns for 1972 through 1977 on 8 October 1982.
With these amended returns, St. Joe included a check in payment of the 1972-1975 and 1977 tax deficiencies. It computed the amount by totaling the deficiencies and deducting the 1976 overpayment. St. Joe also computed the total interest it owed on the deficiencies, deducted the interest which it claimed was owed to it for the overpayment and remitted that amount as well. The Department did not object to St. Joe's method of computing the net tax owed, but did require payment of the amount of interest St. Joe had deducted from the interest it owed. St. Joe paid the required amount, but filed a claim for refund. The Department denied the claim stating that the "offset of deficiency and overpayment is not recognized when computing interest." Noting further that St. Joe had claimed credit for the overpayment by deducting it from the deficiencies owed, the Department found that "the 1976 refund would be deemed to have been made within the nine-month period required under Florida Statute § 214.14."
St. Joe then initiated a proceeding under Section 120.57(1), Florida Statutes (1983). The hearing officer noted that Section 214.14 required the Department to pay interest on overpayments, "except that if any overpayment is refunded within 9 months after the last date prescribed for filing the return of such tax or within 9 months after the return was filed, whichever is later, no interest shall be allowed." (Emphasis supplied)
St. Joe contended that "the return" meant its original return, due 1 October 1977; because more than nine months had passed since that date without a refund, the Department owed it interest. The Department countered that "the return" encompassed the amended return filed by St. Joe after the Internal Revenue Service audit and that the nine-month period did not begin until that amended return was filed; because St. Joe received the refund immediately upon filing the amended return, no interest was due thereon.
The hearing officer adopted St. Joe's position finding: 1) Section 214.14 refers only to "the return"; if that phrase was intended to include "amended return," the Legislature could have said so; 2) even if the Department's interpretation was plausible, it was a nonrule policy, unsupported by *401 rule or precedent; and 3) the Department's reasoning would result in the inequitable situation wherein a taxpayer would owe interest on deficiencies discovered by audit, but would not be entitled to receive interest if overpayments were revealed. A recommended order was then issued holding that St. Joe was entitled to be credited with the appropriate interest on the 1976 overpayment and that its application for refund should be granted. The Final Order of 16 February 1984 rejected the recommended order and concluded St. Joe was not entitled to the refund. The Department based its order on three factors: 1) the Legislature provided the nine-month period in Section 214.14 to allow the Department to examine a return to determine the presence of an overpayment; under St. Joe's reasoning, the Department would have to pay interest without any examination if the audit was concluded after the nine-month period; 2) St. Joe's overpayment was not apparent from the original return, therefore the Department did not receive notice of it until the amended return was filed more than nine months after the original return; 3) the request for refund was not filed within three years of the filing of the return, and hence was not timely, Section 214.16(1)(a); and 4) since St. Joe claimed the refund and took credit for it simultaneously, the Department never had to act on the claim and the nine months never began to run.
St. Joe maintains its position on appeal, i.e., that "the return" in Section 214.14 means the original return, in this case the one filed on 23 September 1977. It argues first that the statute as a whole evinces a legislative intent to pay interest on a taxpayer's overpayment, if it is not refunded within nine months; here, the Department has been in possession and had the use of St. Joe's overpayment for five years. Elsewhere in the chapter, St. Joe points out Section 220.31, which provides that every taxpayer required to file "a return under this code or a notification under s. 220.23(2) [Florida Statutes (1983)]" shall pay any tax due "on or before the date fixed for filing such return or notification." It argues that this highlights the difference between a return and the notification it filed; if notification under Section 220.23(2) is the equivalent of the return, as the Department argues, it should not be able to collect interest on the deficiencies because St. Joe paid the tax it owed "on or before the date fixed for filing such ... notification." Section 220.31. St. Joe rebuts the Department's assertion of untimeliness by pointing out Section 220.23(2)(d), Florida Statutes (1983), which gives a taxpayer two years after the filing of Section 220.23 notification in which to file a claim for refund, "any other provision in Part I of Chapter 214 notwithstanding." If "the return" of Section 214.14 includes Section 220.23 notification, as the Department contends, Section 220.23(2)(d) is superfluous since in that case such notification would itself restart the three-year limitations period of Section 214.16.
The Department makes three basic arguments against St. Joe's interpretation of Section 214.14: 1) it deprives the Department of the nine months for review of the return which the Legislature intended it should have: 2) it ignores the nature of Section 214.14 as a notice statute, i.e., that the statute was designed so that the nine month period would not commence until the Department received notice of the overpayment; and 3) the meaning of "the return" is ambiguous and, because it authorizes the payment of interest, in derogation of the State's sovereignty, should be strictly construed in the Department's favor, i.e., their argument, not St. Joe's, should be adopted.
Addressing the latter contention first, the Department argues that the statute is ambiguous and that the court has a duty to construe it favorably to the State. However, construction of a statute is not necessary when the language is both clear and reasonable and logical in its operation. In such a case, the court should not search for excuses to give a different meaning to words used in the statute. Vocelle v. Knight Brothers Paper Co., 118 So.2d 664 (Fla. 1st DCA 1960); Wald v. Sarasota Co. Health Facilities Authority, 360 So.2d 763, *402 770 (Fla. 1978). In Section 214.14, the Legislature has mandated that interest be allowed and paid "upon any overpayment in respect of a tax made subject to this chapter, except that if any overpayment is refunded within nine months after the last date prescribed for filing the return of such tax ... or within nine months after the return was filed, whichever is later, no interest shall be allowed... ." (Emphasis supplied) Here, by its use of the article "the," the statute clearly contemplates a single tax return, not the multiple returns suggested by the Department; further, the overpayment referred to occurs when the initial return and payment are filed. Therefore, "the return of such tax" can only refer to the initial return and payment. The Department's interpretation would require the court to add the word "amended" to Section 214.14, and it is axiomatic that the court is not free to add words to steer a statute to a meaning which its plain wording does not supply. James Talcott, Inc. v. Bank of Miami Beach, 143 So.2d 657 (Fla. 3d DCA 1962). Therefore, because we find that the meaning of the statute in question is clear on its face, it is unnecessary to apply to it the strict construction principles for which the Department argues.
It is not only the plain language of the statute which supports St. Joe's interpretation of Section 214.14. It does not appear to be the case that the nine-month grace period provided in Section 214.14 is for purposes of review of the return, as the Department argues. That period can properly be circumvented in circumstances where no amended return is filed. Section 214.16(1)(a), Florida Statutes (1983), provides that a taxpayer shall have three years from the filing of the return in which to file a claim for refund; therefore, a claim filed after the nine-month period but before the 3-year limitation is acceptable. In that situation, the only return filed is the original return; the Department does not argue that a claim for refund is a return within Section 214.14. Therefore, the Legislature itself has created a situation wherein the nine-month period can legitimately be avoided, without the filing of any return but the original. It clearly would not have done so had it intended that the nine months of Section 214.14 be an inviolable review period. Therefore, it is no argument against St. Joe's interpretation to say it deprives the Department of the opportunity for review.
With regard to the department's contention that Section 214.14 is a notice statute, this court recently held in R.J. Reynolds Tobacco Co. v. Department of Revenue and Office of the Comptroller, 455 So.2d 524 (Fla. 1st DCA 1984), that there was "no support for DOR's `notice' interpretation of Section 214.14." Id. at 524. In that case, there was no dispute over entitlement to interest, but only on the issue of when that interest began to accrue; at the time of the payment of the tax, or when the Department received notice that an overpayment had been made. The court rejected the Department's notice argument, and found that the interest began accruing from the dates the tax was actually paid, because "these are the dates from which DOR actually had use of the overpayment." Id. at 524 (Emphasis supplied)
Therefore, even though the facts are dissimilar to those herein, the court's holdings are still significant to this case: 1) Section 214.14 is not a notice statute; the Department's obligations thereunder do not depend on its knowledge that an overpayment has been made, and 2) the length of time which the Department has use of the overpayment is a key consideration with regard to the payment of interest. We must, therefore, reject as immaterial the Department's argument that it did not know of the overpayment until the amended return was filed, more than nine months after the original return and payment were made. Further, the Department had the use of St. Joe's money from the date it was originally paid, i.e., 23 September 1977; under Reynolds, it is from this date that interest owed by the Department begins to *403 accrue, not from the receipt of notice of an overpayment.
Based on the foregoing, the final order of the Department of Revenue is reversed and the cause is remanded with instructions to refund the amount of interest due on St. Joe's overpayment of its 1976 corporate income tax computed at the statutory rate of 6% per year, dating from the last date prescribed for filing the return herein, 1 October 1977.
St. Joe's motion for attorney's fees is denied.
ZEHMER, J., concurs.
ERVIN, C.J., dissents with opinion.
ERVIN, Chief Judge, dissenting.
I respectfully disagree with the majority's conclusion that Section 214.14, Florida Statutes, is clear on its face and can only apply to original  as opposed to amended returns. The majority reasons that because the legislature employed the article "the", that only one single tax return was contemplated; therefore the overpayment referred to in section 214.14 occurs when the initial return and payment are filed. The department suggests another interpretation, arguably one less plausible than that advanced by the majority, but surely within the range of permissible interpretations: that the portion of section 214.14, referring to the refundment of an overpayment within nine months after the last date prescribed for filing the return, applies to original returns, in that section 220.222 specifies the dates that corporate income tax returns must be filed, but that the provision of section 214.14, providing that no interest shall be paid if the refund is granted "within nine months after the return was filed," contemplates amended returns  not initial returns  because no specific dates are prescribed for the filing of amended returns under the applicable taxing statutes. As the department points out, an amended return may be generated in several ways. One such way occurs when  as here  the taxpayer is subjected to a federal tax audit and, under the provisions of section 220.23(2)(a), notifies "the department of such adjustment by filing either an amended return or such other report as the department may by regulation prescribe, ... ." (e.s.) In the case at bar the taxpayer filed amended returns in 1982 for the taxable years 1972-1977. The amended return, as it applied to the year 1976, reflected an overpayment in the original return which had been filed in 1977.
Once again this court is confronted with the question of which entity or person has the responsibility to interpret a regulatory statute: a hearing officer assigned by the Division of Administrative Hearings, an Article V court or the administrative agency charged with the law's enforcement. This court has on more than one occasion held that agencies are afforded wide discretion in the interpretation of statutes which they are empowered to administer and their interpretations will not be overturned on appeal unless clearly erroneous. Moreover courts will defer to any administrative interpretation within the range of possible interpretations. State Department of Health and Rehabilitative Services v. Framat Realty, Inc., 407 So.2d 238 (Fla. 1st DCA 1981); Department of Administration v. Nelson, 424 So.2d 852 (Fla. 1st DCA 1982); Natelson v. Department of Insurance, 454 So.2d 31 (Fla. 1st DCA 1984). Narrowing the rules of statutory construction to taxing statutes, the general rule is that taxing statutes conferring authority to impose taxes must be strictly construed strongly against the government, and liberally in favor of the taxpayer. State ex rel. Szabo Food Services, Inc. of North Carolina v. Dickinson, 286 So.2d 529 (Fla. 1973); United States Gypsum Co. v. Green, 110 So.2d 409 (Fla. 1959); State Department of Revenue v. Anderson, 403 So.2d 397 (Fla. 1981); Wanda Marine Corporation v. State, Department of Revenue, 305 So.2d 65 (Fla. 1st DCA 1974). On the other hand, constructions of exceptions, exemptions or benefits from taxation are strictly applied against the taxpayer. Id.
I think it is obvious, unless we are prepared to say that the statute in question is *404 free from any reasonable interpretation, that we must consider section 214.14, because it authorizes the government to pay interest on overpayments made by the taxpayer, in derogation of sovereignty and therefore strictly construe it against the taxpayer. At common law, there was no right to a refund from the sovereign; as a result, in the absence of a statute authorizing a refund, a refund of taxes could not be allowed unless the taxpayer could demonstrate that the tax was paid involuntarily or compulsorily. See North Miami v. Seaway Corporation, 151 Fla. 301, 9 So.2d 705 (1942); State ex rel. Victor Chemical Works v. Gay, 74 So.2d 560, 562 (Fla. 1954). Indeed, in State of Florida ex rel. Four-Fifty Two-Thirty Corporation v. Dickinson, 322 So.2d 525 (Fla. 1975), the supreme court was confronted with a question concerning whether a taxpayer should be permitted interest on refunds of tax overpayments, and the court, after construing certain provisions of the taxing statute, commented that because the statute did not provide for the payment of interest, no interest could be permitted.
If I understand the position of the majority correctly, it holds, solely by looking to the provisions of sections 214.14 and 214.16(1)(a)  the three-year limitation period for filing a refund  that the legislature contemplated a situation wherein a claim filed after the nine-month grace period, but before the expiration of the three-year period, would nevertheless require the payment of interest. For example, if a taxpayer applied for a refund two years and eleven months after filing his initial return, he would still be entitled to interest, notwithstanding the department's prior lack of notice, because more than nine months had expired from the date the return was filed. The difficulty I have with the majority's consideration of only the above two statutes is that in the case at bar more than three years had expired from the date the taxpayer filed its original return (1977), and the date that it applied for a refund (1982). If the three-year period provided for in section 214.16(1)(a) were solely applicable to initial returns, St. Joe would be entitled neither to a refund nor to interest. The taxpayer, however, has argued, and I agree, that the time for filing a refund claim is extended by the provisions of section 220.23(2)(d), providing that "when notification of an adjustment is required ..., a claim for refund may be filed within 2 years after the date on which such notification was due, ... notwithstanding any other provision contained in part I of chapter 214." (e.s.) Because section 220.23(2)(d) provides the only authorization permitting a federally audited taxpayer to file a claim for a refund after the passage of three years from the filing of an original return, in my judgment the provisions of sections 220.23 and 214.14 and 214.16(1)(a) should be read in pari materia with one another, thereby validating the department's interpretation that section 214.14 does not require the payment of interest until nine months have followed the filing of an amended return. Thus, if the time period for filing an amended return or claim for refund is extended two years following notification of an overpayment, in my judgment the following statutory interpretations could permissibly be applied: (1) That the taxpayer has only two years following the notification to file his amended return or claim for refund, or (2) that if the amended return is filed within two years following the notification, the claim for refund, by reading the provisions of section 214.16(1)(a) in pari materia with those of section 220.23(2)(d), may be filed within three years after the filing of the amended return.
Being of the view that the above interpretations may be permissibly inferred from the statutes under consideration, I would therefore conclude that the legislature must have reasonably contemplated that interest would be payable only after the expiration of nine months following the filing of an amended return, when such return was caused by notification to the taxpayer that an overpayment of taxes had previously been made.
R.J. Reynolds Tobacco Co. v. Department of Revenue and Office of the Comptroller, *405 455 So.2d 524 (Fla. 1st DCA 1984), alluded to by the majority, is inapplicable to the case before us insofar as the issue relates to whether section 214.14 applies to both original and amended returns. R.J. Reynolds rejected the department's argument that interest on overpayments accrues only from the date the department receives notice of the overpayment, but it did not address the question of whether interest could properly run before the expiration of nine months after the filing of an amended return.
In that the construction placed upon the statute by the agency authorized to regulate the subject involved was not clearly erroneous, I would affirm. I agree, however, that St. Joe's motion for attorney's fees should be denied.