868 So.2d 1227 (2004)
Sallie CLEVELAND, Appellant,
v.
FLORIDA DEPARTMENT OF CHILDREN AND FAMILIES DISTRICT: 07 SEMINOLE UNIT 55205, Appellee.
No. 1D03-1744.
District Court of Appeal of Florida, First District.
March 22, 2004.
*1228 Treena A. Kaye of Community Legal Services of Mid-Florida, Inc., Sanford, for Appellant.
Kelly J. McKibben, Orlando, for Appellee.
ERVIN, J.
This is an administrative appeal from an order of the appellee, Department of Children and Families (DCF or department), denying appellant Sallie Cleveland's application for relative-caregiver (RC) benefits as a long-term permanent custodian of her three minor grandchildren. Because we conclude the denial of the application was based on an erroneous interpretation of law, we reverse the order of denial and remand the case to the agency with directions.
In April 1994, the juvenile court determined that Mrs. Cleveland's three grandchildren were dependent by reason of their neglect, abuse or abandonment, as prescribed in chapter 39, Florida Statutes, and that the children would remain in the grandmother's temporary care while under the protective supervision of the department.[1] A later order placed the children in the long-term permanent custody of the grandmother. As legal custodian, Mrs. Cleveland has, since 1994, continuously received temporary cash assistance (TCA) from DCF and was receiving $303.00 per month at the time of the hearing below.
In 2002, because Mrs. Cleveland had suffered severe financial reversals caused by the death of her husband and extensive health-related expenses, she applied for conversion of the TCA benefits she had been receiving to RC benefits under *1229 section 39.5085, Florida Statutes (2002), following the department's advice to her the preceding year that she might be eligible for greater benefits under the RC program than those available through TCA. After its preliminary denial, the application proceeded to hearing before a DCF hearing officer, resulting in the order of denial now on appeal. The reasons stated in the order were based on the department's construction of Florida Administrative Code Rule 65C-24.010,[2] listing the eligibility requirements necessary for an applicant's receipt of RC benefits. The department concluded that Mrs. Cleveland did not fulfill the eligibility criteria for the program because (1) the RC Communication Forms, which were necessary to verify that the children had been adjudicated dependent, had not been completed by the DCF Family Safety office and routed to the DCF Economic Self-Sufficiency (ESS) office; (2) the juvenile court had terminated jurisdiction in 1997, thus ending the children's dependency status and rendering them ineligible for the RC benefit program; and (3) no dependency adjudication or home study had been in place since the creation of the RC program in 1998.[3]
We are committed to the rule that an agency's interpretation of a statute it is charged with administering should not be rejected so long as its interpretation is consistent with the legislative intent and is supported by competent, substantial evidence. See Pub. Employees Relations Comm'n v. Dade County Police Benevolent Ass'n, 467 So.2d 987, 989 (Fla.1985). The department's construction of its rule is, however, neither consistent with the legislative purpose nor supported by the evidence. In reaching its decision, DCF relied on a rule which, at the time Mrs. Cleveland filed her petition in 2002, had become obsolete by reason of subsequent statutory amendments governing the RC program.
Initially, we note that chapter 65C-24 was adopted before the enactment of the 2000 amendment to section 39.5085, Florida Statutes,[4] which expanded the RC program to long-term relative caregivers, such as Mrs. Cleveland, given permanent custody of children adjudicated dependent pursuant to chapter 39. DCF has not modified its rules to implement the amended statute by providing for the eligibility of relatives with long-term permanent custody of children. As such, the unchanged rule clearly contradicts section 39.5085, Florida Statutes (2002), which contains categories of relative caregivers eligible for the program different from those listed in Rule 65C-24.010.
*1230 Section 39.5085(2)(a) provides the only eligibility criteria necessary for Mrs. Cleveland to meet. In order for a relative caregiver to be eligible for RC assistance, section 39.5085 requires that (1) the relative be within the fifth degree by blood or marriage to the parent or stepparent of a child for whom they are caring; (2) the relative be caring full-time for a child determined dependent as a result of abuse, neglect, or abandonment, and that placement of the child with the relative be made pursuant to chapter 39, Florida Statutes; (3) the placement be either court-ordered temporary legal custody under protective supervision, or court-ordered placement in the home of a relative as a permanency option; (4) the relative caregiver be capable, as determined by a home study, of providing a safe and stable home for the children in which their well-being is met; and (5) that the RC benefits be provided to relieve the financial burden that would otherwise make the relative caregiver unable to serve.
Mrs. Cleveland satisfies all statutory criteria for eligibility in the RC program. The parties jointly stipulated that Mrs. Cleveland is the maternal grandmother of the three children; that she has been acting in the role of a substitute parent and full-time caregiver for the three children as a result of the juvenile court's determination of their dependency based on a finding of child abuse, neglect or abandonment under chapter 39, Florida Statutes; that the children were placed in Mrs. Cleveland's legal custody in 1994, after the court's adjudication of dependency which followed the agency's placement recommendation, that as legal custodian, she has been receiving TCA benefits on behalf of all three children;[5] and that after placing the children with Mrs. Cleveland, the court twice thereafter determined that their placement in the home was stable and in their best interests. Moreover, DCF made no contention in its brief or during oral argument that Mrs. Cleveland did not satisfy her burden of showing financial need for the greater RC benefits.
Despite the parties' stipulations, DCF argues that the criteria set out under Rule 65C-24.011, which the hearing officer followed in deciding Mrs. Cleveland's ineligibility to receive RC benefits, provides that an applicant must also show (1) the completion of a new home study, (2) the approval of the home, (3) the dependency adjudication of the child, and (4) an order of the court placing the child with a relative.[6]
It is clear from the record that the three grandchildren were adjudicated dependent, and that Mrs. Cleveland was approved as a long-term permanent caregiver following DCF's favorable home study. The fact that neither of the above events occurred after the inception of the RC program is immaterial. To require an additional showing of such conditions is, in our judgment, contrary to the broad purpose expressed by the legislature in creating the Relative Caregiver Program, which was designed to
(a) Recognize family relationships in which a grandparent ... is the head of a household that includes a child otherwise at risk of foster care placement.

*1231 (b) Enhance family preservation and stability by recognizing that most children in such placements with grandparents and other relatives do not need intensive supervision of the placement by the courts or by the department.
(c) Recognize that permanency in the best interests of the child can be achieved through a variety of permanency options, including long-term relative custody, guardianship, or adoption, by providing additional placement options and incentives that will achieve permanency and stability for many children who are otherwise at risk of foster care placement because of abuse, abandonment, or neglect, but who may successfully be able to be placed by the dependency court in the care of such relatives.
(d) Reserve the limited casework and supervisory resources of the courts and the department for those cases in which children do not have the option for safe, stable care within the family.
§ 39.5085(1), Fla. Stat. (2002).
DCF's argument that an order of the juvenile court in 1997 terminating jurisdiction had the effect of concluding the children's dependency status, thereby causing them to become ineligible for the RC benefit program, represents, in our judgment, a fundamental misunderstanding of the placement process under chapter 39, which contemplates the eventual termination of jurisdiction at the court's discretion. See § 39.521(1)(b)(3), Fla. Stat. (2002) ("Protective supervision shall be terminated by the court whenever the court determines that permanency has been achieved.... The termination of supervision may be with or without retaining jurisdiction[.]"); § 39.622(9), Fla. Stat. (2002) ("The court shall discontinue regular judicial-review hearings and may relieve the department of the responsibility for supervising the placement of the child whenever the court determines the placement is stable[.]").
Given the clearly expressed goals of the legislature, recognizing that the permanent placement of a child in a stable home environment with a relative is preferred over the often impermanent arrangement of foster care, it is inconceivable to us that the legislature intended to disentitle such custodians from eligibility for RC benefits, in the face of evidence clearly showing their earlier compliance with all statutory requisites for same. If we were to accept DCF's argument, the result would be that only long-term relative caregivers who currently demonstrate their compliance with the statutory criteria would be entitled to RC benefits, whereas those who otherwise conformed with such requisites before the inception of the RC program are rendered ineligible in that they are unable to establish their present compliance with the legislative demands because of the termination of both the court's jurisdiction and the department's supervision.
DCF's restrictive construction of the statutory process overlooks the legislature's overarching expressed purpose for providing financial assistance to relative caregivers, recognizing that without such provision, they would be unable to serve in such capacity, thereby "exposing the child to the trauma of placement in a shelter or in foster care." § 39.5085(2)(a)(2), Fla. Stat. (2002). In our judgment, the department's interpretation of its regulatory authority is clearly at odds with statutory language to the contrary, and for that reason must be rejected. See St. Joe Paper Co. v. Dep't of Revenue, 460 So.2d 399, 401 (Fla. 1st DCA 1984). We therefore reverse DCF's decision declaring Mrs. Cleveland ineligible for RC benefits.
Mrs. Cleveland next argues that if she is entitled to RC benefits, they should be made retroactive to June 1, 1999, the date *1232 of the adoption of Rule 65C-24.005(3), because DCF contravened the provisions of the rule by failing to inform and assist her in applying for the RC program. In the alternative, she maintains that such benefits should commence no later than December 2001, the time she first discussed her eligibility for such benefits with DCF employees. We cannot agree with either assertion. At oral argument, Mrs. Cleveland conceded that her eligibility for RC benefits as a relative caregiver with long-term custody arose not through the provisions of the department's rule, but rather from the 2000 amendments to section 39.5085, Florida Statutes, which did not take effect until a year after the rule's adoption. Moreover, because chapter 65C-24 is inapplicable to Mrs. Cleveland, there is no legal basis for her claim that DCF was required to inform her of such eligibility.
As for appellant's argument that she should receive RC benefits from the date she informally discussed the question of her eligibility for such benefits, the evidence is clear that Mrs. Cleveland did not apply for same until May 31, 2002, and that she could not become eligible until the TCA benefits she had been receiving were converted to RC benefits, which could not occur until ten days, or the next recurring month after DCF's ESS office received the applicant's RC Communication Form from the DCF Family Safety office in order to verify her eligibility for the greater benefit. Thus, there was no evidence from which the hearing officer could decide that appellant was eligible for RC benefits at any time before she actually applied for same. We therefore agree with the department to the extent that it maintains Mrs. Cleveland could not establish her eligibility for such benefits until after the filing of her application.
Because we have decided that DCF erred as a matter of law in denying appellant's request, we conclude she is entitled to RC payments from the time she should have received them if the department had correctly processed her application. The record discloses that at the time of her application, the department was handling requests for RC benefits in the following manner: (1) the applicant sought such benefits through either the ESS office or the Family Safety office; (2) an RC Communication Form would be generated either directly by the Family Safety office or by the ESS office, which would route the blank form to the Family Safety office depending on the office to which the applicant initially applied; (3) the Family Safety office would complete the form, essentially checking off whether the applicant was eligible; (4) if eligible, the Family Safety office would route the completed form to the ESS office; (5) the ESS office would then convert the applicant's existing TCA payments to RC benefit payments within ten days of receiving the completed form, or by the next recurring month.
In the present case, the Family Safety office failed to complete the form and forward it to the ESS office because of its erroneous belief that Mrs. Cleveland was ineligible for RC benefits. It is unclear from the record when the form would have been processed in the regular course of office practice if the department had correctly decided the eligibility issue. Accordingly, we remand the case to the department to decide, either from the evidence before it, or, if necessary, from additional evidence, when, during the ordinary application process, appellant should have received RC benefits if she had been properly determined eligible. Because of the legislative proscription in section 39.5085(2)(e) against children simultaneously receiving both TCA and RC benefits, DCF shall be allowed an offset or credit against RC benefits paid to Mrs. *1233 Cleveland during the time she also received TCA payments.
REVERSED and REMANDED.
ALLEN and WEBSTER, JJ., concur.
NOTES
[1] The department had previously conducted a favorable home study and recommended placement of the children in Mrs. Cleveland's home.
[2] The rule provides in pertinent part:

In order for a child placed with a relative caregiver to receive a monthly Relative Caregiver Program benefit, the child must:
* * *
(3) Be adjudicated dependent pursuant to 39.508(9)(a)3. or 4., F.S., in
(a) Court-ordered temporary legal custody of the relative, or
(b) Court-ordered placement in the home of a relative under protective supervision of the department.
[3] See Ch. 98-78, § 1, at 554-55, Laws of Fla., enacting section 39.5085, Florida Statutes.
[4] For example, section 39.5085(2)(a)(2) provides that placement with a relative

may be either court-ordered temporary legal custody to the relative under protective supervision of the department pursuant to s. 39.521(1)(b)3., or court-ordered placement in the home of a relative as a permanency option pursuant to s. 39.622. The Relative Caregiver Program shall offer financial assistance to caregivers who are relatives and who would be unable to serve in that capacity without the relative caregiver payment because of financial burden, thus exposing the child to the trauma of placement in a shelter or in foster care.
[5] As of August 2002, however, one of the children had become ineligible for RC benefits due to the child's receipt of supplemental security income.
[6] Upon the applicant's showing of compliance with the above requirements, the rule provides that the DCF Public Assistance Specialist must convert TCA payments then being made to RC benefits for each eligible child.