Dear Ms. Blair:
On behalf of the City Commission of the City of Wildwood, you have been asked to request my opinion on substantially the following questions:
1. Whether impact fees collected by the City of Wildwood for purposes of expanding a particular utility service such as refuse/garbage collection may be used for another utility service which generally benefits the subject property which paid the impact fees?
2. Whether the City of Wildwood must return impact fees which have been collected for a service which will be privatized to the owner of the property for which the fees were collected or to the person from whom the impact fees were paid.
In sum:
1. Impact fees collected by the City of Wildwood for the purpose of refuse collection must be used for that purpose and for other solid waste-related purposes. Other utility services unrelated to solid waste collection may not be funded with surplus impact fees collected for refuse/garbage collection.
2. In the absence of any direction from the Legislature as to the return of validly collected impact fees for refuse collection, this office would suggest that the city utilize these fees for solid waste-related purposes as considered in St. Lucie County v. City of Fort Pierce.
According to information you have supplied to this office, the City of Wildwood has, for several years, levied and collected an impact fee for refuse collection as well as other utilities and services. The impact fees collected by the city for refuse collection were imposed and collected pursuant to section 163.31801, Florida Statutes. The city has now determined that lower rates can be maintained through contracting and privatizing the refuse collection portion of its utility service and has entered into a contract for this service with a private company. However, the city currently holds $165,981.00 that was collected as refuse impact fees. Since the city is privatizing refuse services, you state that these fees will not be used for the expansion of refuse collection services. Therefore, you have asked whether these surplus fees may be used for any other utility service or must be returned.
Question One
Section 163.31801, Florida Statutes, is the "Florida Impact Fee Act."[1] The intent of the Legislature in adopting this statute is provided in subsection (2) thereof:
"The Legislature finds that impact fees are an important source of revenue for a local government to use in funding the infrastructure necessitated by new growth. The Legislature further finds that impact fees are an outgrowth of the home rule power of a local government to provide certain services within its jurisdiction. Due to the growth of impact fee collections and local governments' reliance on impact fees, it is the intent of the Legislature to ensure that, when a county or municipality adopts an impact fee by ordinance or a special district adopts an impact fee by resolution, the governing authority complies with this section."
The act requires that any impact fee adopted by municipal ordinance must, at a minimum:
"(a) Require that the calculation of the impact fee be based on the most recent and localized data.
(b) Provide for accounting and reporting of impact fee collections and expenditures. If a local governmental entity imposes an impact fee to address its infrastructure needs, the entity shall account for the revenues and expenditures of such impact fee in a separate accounting fund.
(c) Limit administrative charges for the collection of impact fees to actual costs.
(d) Require that notice be provided no less than 90 days before the effective date of an ordinance or resolution imposing a new or increased impact fee. A county or municipality is not required to wait 90 days to decrease, suspend, or eliminate an impact fee." (Section 163.31801(3), Florida Statutes)
Nothing in section 163.31801, Florida Statutes, addresses the redirection of impact fees collected under that statute to other purposes.
With regard to the imposition of a viable impact fee, assessment and collection of such a fee must be based upon the pro rata share of the reasonably anticipated costs of capital expansion required to provide a service to a user.[2] The nature of such fees was expressed by the Supreme Court of Florida in Contractors and Builders Association of Pinellas County v. City of Dunedin, [3] as follows:
"The avowed purpose of the ordinance in the present case is to raise money in order to expand the water and sewerage systems, so as to meet the increased demand which additional connections to the system create. The municipality seeks to shift to the user expenses incurred on his account. . . ."[4]
This office has also concluded that impact fees are in the nature of user charges.[5] In Attorney General Opinion 76-137, this office commented upon the imposition of an impact fee for the construction of municipal water and sewer facilities, stating, "there is little doubt that the fee imposed (by city ordinance) is not a tax or a special assessment but is a valid imposition of an `impact fee' or user charge for the privilege of connecting to the city's water and sewer system. . . ."
In City of Dunedin, the Court delineated the test to be applied in determining the validity of a locally imposed "impact fee." Such an impact fee must satisfy the following test: (1) new development must require that the present system of public facilities be expanded; (2) the fees imposed on users must be no more than what the local governmental unit would incur in accommodating the new users of the system; and (3) the fees must be expressly earmarked and spent for the purposes for which they were charged. Thus, a viable impact fee, levied and collected for an express purpose, must be spent for that purpose.
In a case involving impact fees for refuse disposal services, St. Lucie County v. City of Fort Pierce, [6] the county brought an action against the city on the parties' waste disposal contract. For a number of years, pursuant to an interlocal agreement, the county had granted the city the right to dispose of its garbage and trash at one of the county's landfills. The city paid tipping fees to the county for the use of the landfill. The fees increased over the course of the agreement and, after a final rate increase, the parties became involved in a dispute concerning the city's use of the landfill. After the fee increase, the city began withholding a portion of its payment to the county complaining that the county was using part of the fees it was collecting to close one of the county's other landfills. The city argued that it never used the landfill being closed and was not responsible for this portion of the assessed fee. The city then began delivering its waste to another landfill outside the county.
St. Lucie County sued for declaratory and injunctive relief concerning the city's right to dispose of its waste outside of the county. The City of Fort Pierce counterclaimed for damages for unjust enrichment. The city based its claim on the theory that it should not be required to pay for the closure of a refuse disposal site never used by the city. The trial court ruled in favor of the city on its unjust enrichment claim and awarded damages to the city. The damage award under the unjust enrichment theory was the subject of the appeal to the Fourth District Court of Appeal. The county raised two points in support of its appeal: 1) that the waste disposal fee was a valid fee and that its partial use for other county solid waste purposes had no effect on the validity of the fee, and 2) that the use of these fees for closure of the landfill was not unjust enrichment. As the court noted, "[s]imply stated it's the county's position that if these fees are valid user fees and they are being used for related waste disposal purposes then there can be no unjust enrichment." The Fourth District Court of Appeal agreed with the county and reversed the lower court decision. As the court stated "[w]e find that the fees are valid user fees and that the fees are being expended for a solid waste-related purpose."[7]
The court's analysis relied on City of New Smyrna Beach v. Board of Trustees of Internal Improvement Trust Fund.[8] In that case, the court dealt with a challenge to the expenditures made by the City of New Smyrna after the collection of a beach use fee. The board's position was that collection of the beach fee only authorized expenditures for "beach maintenance." The court rejected this argument and stated that: "If the term ?beach maintenance' were to be construed as limited solely to physical upkeep of the beach, then the municipalities would have to shoulder the economic burden of the increased costs for law enforcement, life guards, emergency service and liability insurance."[9] The court upheld the city's expenditures, and held that the fees could be used for traffic management, parking, law enforcement, liability insurance, sanitation, lifeguards and other staff purposes, "so long as such expenses were beach related."[10] Relying on the holding in City of New Smyrna Beach, the court in St. Lucie County agreed with the county that "the use of the fees to close down the Airport Landfill was a solid waste related purpose and therefore a valid expenditure from the fees collected."[11]
Similarly, the City of Wildwood has imposed an impact fee for refuse collection. The City imposed this impact fee pursuant to section 163.31801, Florida Statutes. As a valid impact fee, the fees imposed must be no more than what the city would incur in accommodating the new users of the system and these fees must be expressly earmarked and spent for the purposes for which they were charged and collected. As Florida courts and this office have recognized, an impact fee, levied and collected for an express purpose, must be spent for that purpose. Thus, the City of Wildwood refuse collection impact fee may be spent only for that purpose and related purposes and may not be directed to another unrelated utility service.
You have cited section 180.07, Florida Statutes, which relates to public utilities and provides for the combination of plants or systems and the pledge of revenues raised pursuant to this chapter for the construction and operation of these plants and systems. You note that subsection (2) of this statute provides:
"Whenever any municipality shall decide to avail itself of the provisions of this chapter for the extension or improvement of any existing utility plant or system, any then-existing plant or system may be included as a part of a whole plant or system and any two or more utilities may be included in one project hereunder. The revenues of all or any part of any existing plants or systems or any plants or systems constructed hereunder may be pledged to secure moneys advanced for the construction or improvement of any utility plant or system or any part thereof or any combination thereof." (e.s.)
According to your letter, the City of Wildwood relied on section 163.31801, Florida Statutes, to impose and collect an impact fee for refuse collection. Further, the city is not considering the extension or improvement of an existing utility plant, but is contracting with a private solid waste provider for services. The clear language of section 180.07(2), Florida Statutes, states that it applies to projects undertaken pursuant to the provisions of Chapter 180. Thus, it does not appear that section 180.07(2), Florida Statutes, provides authority for the City of Wildwood to use impact fees which were levied and collected for that purpose to support other utility services.
Question Two
Your second question relates to the disposition of impact fees which have been levied and collected, but are no longer needed for capital expansion to provide refuse collection services.
No statutory or other authority of which I am aware or to which you have brought my attention would authorize the City of Wildwood to return or refund validly imposed and collect impact fees.[12]
In the absence of any direction in the law for such an action, this office cannot suggest what may appear to be an equitable resolution to your question.[13] In the absence of any such legislative authority for a refund, this office would suggest that the city utilize these fees for solid waste-related purposes as considered in St. Lucie County v. City of Fort Pierce, [14] cited and discussed above, which would represent a valid expenditure of the fees collected.
Sincerely,
Bill McCollum Attorney General BM/tgh
[1] See s. 163.31801(1), Fla. Stat.
[2] See Contractors and Builders Association of PinellasCounty v. City of Dunedin, 329 So. 2d 314 (Fla. 1976), appealafter remand, 358 So. 2d 846 (Fla. 2d DCA 1978), cert.denied, 444 U.S. 867 (1979). See also Home Builders andContractors Association of Palm Beach County, Inc. v. Board ofCounty Commissioners of Palm Beach County,446 So. 2d 140 (Fla. 4th DCA 1983), petition for reviewdenied, 451 So. 2d 848 (Fla. 1984), appeal dismissed,105 S.Ct. 376 (1984).
[3] 329 So. 2d 314 (Fla. 1976).
[4] 329 So. 2d at 318. Cf. Loxahatchee River EnvironmentalControl District v. School Board of Palm Beach County,496 So. 2d 930 (Fla. 4th DCA 1986), approved,515 So. 2d 217 (Fla. 1987), in which the court determined that certain service availability standby charges were within the definition of impact or service availability fees established by the State Department of Education.
[5] See Ops. Att'y Gen. Fla. 76-137 (1976), 82-09 (1982), and 85-101 (1985); Inf. Op. to Nieman, dated Oct. 4, 2010.
[6] 676 So. 2d 35 (Fla. 4th DCA 1996).
[7] Id. at 37.
[8] 543 So. 2d 824 (Fla. 5th DCA 1989).
[9] Id. at 829.
[10] Id. See also Jacksonville Port Authority v. AlamoRent-A-Car, 600 So. 2d 1159 (Fla. 1st DCA 1992), reviewdenied, 613 So. 2d 1 (Fla. 1992).
[11] Supra n. 6 at 37.
[12] Cf. State ex rel. Victor Chemical Works v. Gay,74 So. 2d 560 (Fla. 1954), holding that unless there was some statutory authority providing for refunds, money could not be recovered once it had been paid into the state treasury and that refunds are a matter of legislative grace; St. Joe PaperCo. v. Department of Revenue,460 So. 2d 399 at 404 (Fla. 1st DCA 1984), "[a]t common law, there was no right to a refund from the sovereign; as a result, in the absence of a statute authorizing a refund, a refund of taxes could not be allowed unless the taxpayer could demonstrate that the tax was paid involuntarily or compulsively[;]" Op. Att'y Gen. Fla. 75-293 (1975).
[13] Cf. Chaffee v. Miami Transfer Company, Inc.,288 So. 2d 209 (Fla. 1974), and Ops. Att'y Gen. Fla. 06-26 (2006) and 81-10 (1981), for the proposition that the Attorney General is without authority to qualify or read into a statute an interpretation or to define words in a statute in a manner which would result in a construction that seems more equitable under circumstances presented by a particular factual situation; such construction when the language of a statute is clear would, in effect, be an act of legislation which is exclusively the prerogative of the Legislature.
[14] 676 So. 2d 35 (Fla. 4th DCA 1996).