803 So.2d 892 (2002)
DEPARTMENT OF REVENUE, Appellant,
v.
DAYSTAR FARMS, INC., ETC., Appellee.
No. 5D01-1554.
District Court of Appeal of Florida, Fifth District.
January 4, 2002.
Robert A. Butterworth, Attorney General and Eric Taylor, Assistant Attorney General, Tallahassee, for Appellant.
Jonathan S. Dean of Dean & Dean, LLP, Ocala, for Appellee.
PER CURIAM.
The Department of Revenue [Department] appeals the final order of the circuit court reversing the Department's denial of a tax refund sought by Daystar Farms, Inc. [Daystar], a Florida corporation, for sales tax charges remitted pursuant to section 212.031, Florida Statutes (1993)[1], by *893 Daystar between January 1, 1994 and March 26, 1996, for payments it received from Dean & Dean, P.A. [Dean & Dean], an Ocala law firm whose members are the sole directors and shareholders of Daystar. The sales tax was derived from payments Dean & Dean made to Daystar for use of office space owned by Daystar. The Department argues on appeal that the circuit court erred in directing it to refund the collected taxes pursuant to an exemption contained in rule 12A 1.070(19)(c), Florida Administrative Code (1994)[2], because Daystar did not have standing to seek the refund and because Daystar was not "equally liable" as guarantors on a mortgage initially secured by Dean & Dean on the property.
In 1990, Dean & Dean purchased certain real property in Ocala, Florida. A few days later, Dean & Dean secured a $254,625 loan for the construction of an office building on the property. The mortgage and note evidencing the loan were signed by Dean & Dean, as principal, and the individual members of Dean & Dean, H. Edward Dean [Edward] and Jonathan and Susan Dean [the Deans], as guarantors. A separate guaranty agreement holding the signatories individually liable for the debt was also signed by Edward and the Deans. Eventually, Dean & Dean occupied office space in the building.
In 1994, Edward and the Deans, upon the advice of their accountant, formed Daystar. The purpose of Daystar was to protect the property from any excess liability that might arise against Dean & Dean over and above its malpractice liability insurance. To accomplish its goal, Dean & Dean first transferred its ownership interest in the property "subject to" the existing mortgage via a recorded quit claim deed to Edward and the Deans as shareholders of Dean & Dean. On the same day, Edward and the Deans executed another unrecorded quit claim deed, which transferred the property to Daystar "subject to" the existing mortgage. Additionally, Edward and the Deans held a directors and shareholders' meeting wherein it was agreed that Daystar would "assume" and pay the sums due on the existing mortgage and enter into a lease with Dean & Dean for the space occupied by it on the property.[3]
Sometime later in 1994, Dean & Dean executed a Mortgage Modification Agreement which consolidated the first mortgage *894 with a second mortgage that had been procured by Dean & Dean prior to the transfer of the property to Daystar. The modification, signed by Dean & Dean as principal, was also signed by Edward, the Deans and Daystar as guarantors. Specifically, the modification provides, "We, the Guarantors acknowledge and consent to the consolidation and modification of the above referenced two (2) mortgages."[4] Other than that representation, there is no express guaranty agreement signed by Daystar which sets forth its obligations for the consolidated loans.
With all the procedural matters seemingly in place, Dean & Dean and IDS commenced making payments to Daystar, the landlord. In collecting the payments, Daystar imposed the sales tax required by section 212.031 and subsequently remitted it to the Department. In June 1996, however, Daystar sought a refund pursuant to section 215.26, Florida Statutes and rule 12-1.070(19)(c), for the portion of Dean & Dean's sales tax it remitted to the Department.[5]
The Department twice denied the refund, concluding that Daystar was not "equally liable" with Dean & Dean on the debt and, therefore, did not qualify for the rule 12A-1.070(19)(c) exemption. Daystar appealed the Department's decision to the circuit court.
At the hearing, the circuit court heard testimony from Jonathan Dean. Dean asserted that the consideration for the transfer of the property between Dean & Dean and Daystar was Daystar's agreement to "fully" assume the liability on the two mortgages. He testified that Dean & Dean was not paying rent to Daystar, but was, rather, paying Daystar for "management services." Dean testified that subsequent to the execution of the modification, Daystar made all the mortgage payments to the lender. Further, he averred that Daystar, as guarantor, was equally liable on the debt with Dean & Dean because "we as shareholders [of Daystar] told [the lender] we would be, and our word means something ... and because there is ... the Mortgage Modification and Renewal Note, which we have signed ... as officers of the corporation, committing Daystar to be equally obligated with Dean & Dean for that debt." Dean admitted, however, that there was no specific written guaranty agreement executed by Daystar, outside of the modification, that set forth the terms of its guaranty of Dean & Dean's outstanding debt. The Department, besides arguing that Daystar was not equally liable on the debt, asserted that Daystar did not have standing to seek the refund under the language of section 215.26, because Dean & Dean was the party entitled to seek the refund.
The circuit court, in entering final judgment concluded:
DAYSTAR FARMS, INC. and DEAN & DEAN, P.A. were "equally liable" on the debt secured by real property owned by DAYSTAR FARMS, INC. and used by DEAN & DEAN, P.A., for purposes *895 of Rule 12A 1.070(19)(c) (1994), Florida Administrative Code.
Pursuant to Rule 12A 1.070(19)(c) (1994), Florida Administrative Code, the consideration exchanged between DAYSTAR FARMS, INC. and DEAN & DEAN, P.A. from January 1, 1994, through March 26, 1996, for the use of the subject real property, was not "rent" but the payment of a debt.
* * * *
Plaintiff is entitled to a refund of all sales tax paid from January 1, 1994 through March 26, 1996, and levied on money received from DEAN & DEAN, P.A.
Plaintiff shall recover from the Department the sum of $6,201.00 for which let execution issue.
Exemptions to the tax statutes are special favors granted by the Legislature and are to be strictly construed against the taxpayer. See Capital City Country Club, Inc. v. Tucker, 613 So.2d 448, 452 (Fla. 1993).
With citation to State ex rel. Szabo Food Services, Inc. of North Carolina v. Dickinson, 286 So.2d 529 (Fla.1973), the Department argues that because Daystar did not "pay" any of the sales tax for which it is seeking a refund, it has not suffered a financial liability and is not, therefore, eligible to obtain a refund claim.[6] Rather, the Department asserts Dean & Dean is the entity which should have sought the refund. The Deans, however, argue that the Department waived this issue because it failed to raise this defense prior to the filing of its responsive pleading. See Nash v. Wells Fargo Guard Servs., Inc., 678 So.2d 1262 (Fla.1996).
"In the administrative context, `[s]tanding has been equated with jurisdiction of the subject matter of litigation and has been held subject to the same rules....'" Grand Dunes, Ltd. v. Walton County, 714 So.2d 473, 475 (Fla. 1st DCA 1998). That being said, "[I]t is well settled that lack of subject matter jurisdiction may be raised sua sponte by an appellate court even if neither party raises issue." See Ruffin v. Kingswood E. Condo. Ass'n, Inc., 719 So.2d 951, 952 (Fla. 4th DCA 1998) (citing Durie v. Hanson, 691 So.2d 485 (Fla. 5th DCA 1997); 84 Lumber Co. v. Cooper, 656 So.2d 1297, 1299 (Fla. 2d DCA 1994)). Thus, "[c]ourts are bound to take notice of the limits of their authority *896 and if want of jurisdiction appears at any stage of the proceedings, original or appellate, the court should notice the defect and enter an appropriate order." Polk County v. Sofka, 702 So.2d 1243, 1245 (Fla.1997).
As the cases above reflect, the issue of jurisdiction over the subject matter is never waived. The Department is correct in its assertion that Daystar lacked standing to commence the refund action in the instant appeal. Section 215.26, Florida Statutes, provides that a refund may be paid only to the person who paid the tax, or his or her heirs, personal representatives, or assignees. "`[W]hen the language of a statute is unambiguous and conveys a clear and ordinary meaning, there is no need to resort to other rules of statutory construction; the plain language of the statute must be given effect.'" Woodham v. Blue Cross & Blue Shield of Florida, Inc., 793 So.2d 41, 44 (Fla. 3d DCA 2001).
The plain language of the refund statute requires that the refund be paid to the person or entity bearing the tax burden. Under the sales tax statutes, the lessee carries the tax burden. Schnurmacher Holding, Inc. v. Noriega, 542 So.2d 1327 (Fla.1989). Here, Dean & Dean, the lessee, paid the tax obligation through its payments to Daystar. Once Daystar received the payments, it simply segregated the sales tax amount and remitted it to the Department. Therefore, at the time of remittance, Daystar did not bear any of the financial burden for the tax liability. Yet Daystar is the entity seeking the refund, and there has been no assignment or transfer by Dean & Dean of its right to collect the refund.
Pursuant to section 215.26 and Szabo, Dean & Dean is the entity that should have sought the refund, and because Dean & Dean has at no time assigned its right or nominated Daystar its representative to collect the paid sales tax, Daystar lacked standing to prosecute the instant refund action. Therefore, the circuit court's order directing the Department to refund the taxes must be reversed.[7]
REVERSED.
COBB, HARRIS and PALMER, JJ., concur.
NOTES
[1] Section 212.031 provides:

(1)(a) It is declared to be the legislative intent that every person is exercising a taxable privilege who engages in the business of renting, [or] leasing ... for the use of any real property....
* * * *
(c) For the exercise of such privilege, a tax is levied in an amount equal to 6 percent of and on the total rent or license fee charged for such real property by the person charging or collecting the rental or license fee.
[2] Rule 12A-1.070(19)(c) in 1994 provided:

(1)(a) Every person who rents or leases any real property ... is exercising a taxable privilege....
* * * *
(19)(c) The total consideration furnished by one corporation to a related corporation for the occupation of real property ... owned by the related corporation is subject to tax, even though the amount of the consideration is equal to the amount of the consideration legally necessary to amortize a debt owned by the related corporation and secured by the real property occupied, or used, and even though the consideration is ultimately used to that debt. However, such consideration is not rent but the payment of a debt if the corporation furnishing the consideration is equally liable on the debt secured by the real property as the related corporation ....
(Emphasis added). This exemption was repealed in 1995.
[3] Daystar also agreed to assume an existing lease Dean & Dean had with a company by the name of IDS for its occupation of office space on the property.
[4] Prior to the execution of the modification, Edward, on behalf of the Deans and Dean & Dean, sent a letter to the mortgage lender in which he asserted that Daystar was going to guarantee the loans.
[5] Section 215.26 provides in pertinent part:

The Comptroller of the state may refund to the person who paid same, or his or her heirs, personal representatives, or assigns, any moneys paid into the State Treasury which constitute:
(a) An overpayment of any tax, license, or account due;
(b) A payment where no tax, license, or account is due; and
(c) Any payment made into the State Treasury in error....
[6] In Szabo, the appellant was engaged in the business of selling food and drink for immediate consumption from vending machines. During the relevant time period, the appellant continuously paid sales taxes to the Department in the total amount of $72, 270.84 on the sale of food from his vending machines in accord with section 212.05, Florida Statutes (1969), which imposed a tax on all retail sales of non-exempt tangible personal property. The appellant's machines were not exempt. In 1971, the Legislature amended section 212.08(1)(b), Florida Statutes. The amendment specifically provided that food and drink sold for immediate consumption from vending machines should not be considered as being exempt from the sales tax. The amendment also provided that the tax imposed on coin-operated vending machines and cable television "shall take effect on October 1, 1971."

When the appellant discovered the amendment, he immediately demanded a refund, asserting that vending machine sales were not taxable prior to the enactment. After rejecting the appellant's argument, the court also noted that as a seller, the appellant was required to collect the tax from the purchaser or consumer. Because of the appellant's status, the court concluded that regardless of whether his activities were exempted, the appellant was not entitled to a refund because he "bore no tax liability and ... [o]ne who does not himself bear the financial burden of a wrongfully extracted tax suffers no loss or injury, and accordingly, would not have standing to demand a refund." 286 So.2d at 532.
[7] Dean & Dean is also barred from seeking the refund because it was required to file an application for refund within three years of the accrual of its right to do so. § 215.26(2), Fla. Stat (1993). The right to the refund accrued on the date Dean & Dean paid the tax. See e.g., State ex rel. Victor Chem. Works v. Gay, 74 So.2d 560 (Fla.1954) (holding that a statute of non-claim runs from the time the taxes are paid).