# FIRST DISTRICT COURT OF APPEAL
# STATE OF FLORIDA

_____

Nos. 1D2023-0987
1D2023-1075
1D2023-1077

_____

ORACLE AMERICA, INC.,

Appellant,

v.

FLORIDA DEPARTMENT OF
REVENUE,

Appellee.

_____


On appeal from the Department of Revenue.
Mark S. Hamilton, General Counsel.


December 4, 2024

LONG, J.


Appellant, Oracle America, Inc. ("Oracle"), appeals a final order entered by the Florida Department of Revenue denying its application to refund excess sales taxes and local surtaxes it collected from its customer, Nielson Company, Inc. ("Nielson"); and two final orders entered by the Department dismissing its application to refund excess sales taxes and local surtaxes it collected from its customers, Fidelity Information Services, LLC ("Fidelity"), and Del Monte Fresh Produce Company ("DMF"). For the reasons below, we affirm the final orders.

## I. Facts

Oracle provides computerized business technology to commercial customers and sells computer software, including future maintenance and support services. Through certain purchases, Oracle collected sales taxes and local surtaxes from its customers and remitted the collected taxes to the Department. It surfaced that Oracle had collected both excess local surtaxes and sales taxes on purchases that were tax exempt.

At its customers' requests, Oracle filed three similar claims with the Department for refunds of sales taxes and local surtaxes it collected from Nielson, Fidelity, and DMF, and remitted to the Department. The Department issued "Notice[s] of Decision of Refund Denial," which denied the claimed amounts because Oracle had not refunded the collected excess taxes to its customers. Oracle subsequently petitioned for reconsideration, asserting it erroneously collected sales taxes and local surtaxes from its customers, which it remitted to the Department, and that Oracle need not refund the tax to its customers before the Department grants the refund application.

The Department denied all three petitions for reconsideration for the same reasons. The only basis for denial that remains in dispute is the Department's position that Oracle had to refund the taxes to its customers before its refund application could be approved.[1]

Oracle filed three petitions for a formal administrative hearing contesting the denial of the refund applications. Because all three petitions presented similar issues, the parties agreed that the Nielsen matter would be heard at the Division of Administrative Hearings, and the Department would hold the Fidelity and DMF petitions in abeyance pending the outcome of that proceeding.

---

[1] The Department also initially denied the refund, in part, by disputing whether the transactions were tax exempt. The Department, however, now concedes that they were.

An Administrative Law Judge held a formal hearing on the petition for the Nielsen matter. Although the ALJ found that the electronically delivered software was exempt from sales tax and that Oracle collected local surtax in excess, the ALJ entered a recommended order that the Department deny the refund claim. The ALJ agreed with the Department that Oracle needed to refund the taxes to Nielsen before the Department approved the refund application. The Department entered a final order adopting the ALJ's recommended order.

The Department then entered separate, yet nearly identical, orders dismissing the petitions with prejudice in both the Fidelity and DMF matters. The Department concluded that Oracle lacked standing because it was neither the taxpayer nor the party that bore the burden of the sales tax, thus it did not have subject matter jurisdiction over the petitions. This consolidated appeal follows.

*II. Analysis*

We review the ALJ's conclusions of law and interpretations of statutes de novo. *MB Doral, LLC v. Dep't of Bus. & Pro. Regul., Div. of Alcoholic Beverages & Tobacco*, 295 So. 3d 850, 853 (Fla. 1st DCA 2020). We review the Department's interpretation of the applicable statutes and rules de novo. *Id.*; *see also* Art. 5 § 21, Fla. Const.

On appeal, Oracle asserts that the sole issue is whether it has the right to apply for a refund and have its application adjudicated before it refunds the taxes at issue to its customers. In response, the Department maintains that Oracle was not entitled to a refund because it was not the taxpayer. We agree with the Department.

We first lay the regulatory and statutory framework that govern collecting, remitting, and refunding taxes. We then turn to Oracle's inability to both seek a refund and contest the refund denial. Finally, we address Oracle's argument that it need not refund its customers before Oracle applies for a refund.

3

## A. Regulatory Framework

In Florida, a tax is levied on the sale price of each item or article of tangible personal property sold at retail. § 212.05(1)(a)1.a., Fla. Stat. A customized software package is considered a service and therefore exempt from taxation, but prepackaged software sold in tangible form is taxable. Fla. Admin. Code R. 12A–1.032. If the prepackaged program is modified or altered and the customer is charged for a single transaction, then the charge is treated as a customized software package exempt from taxation. *Id.* Florida law also authorizes counties to impose local option discretionary surtaxes on the first $5,000 of an item of tangible personal property sold. § 212.054(1), (2)(a)–(b), Fla. Stat.

"Dealers," are those who sell tangible personal property at retail, § 212.06(2)(c), Fla. Stat., and who collect sales taxes owed from their purchaser or customer. § 212.07(1)(a), Fla. Stat. In turn, dealers remit the taxes collected to the Department. § 212.06(1)(a), Fla. Stat. At the moment of collection, the taxes become state funds that are due to the Department the following month. § 212.15(1)(a), Fla. Stat. And dealers are compensated for collecting and remitting the taxes to the Department. § 212.12(1), Fla. Stat.

## B. Procedure for Refund

Both Florida law and the Florida Administrative Code provide instructions for seeking a refund from the state treasury. But, as we will see, the two are, at times, in tension. Florida law identifies who may be refunded. It provides "[t]he Chief Financial Officer may refund to the person who paid same, or his or her heirs, personal representatives or assigns, any moneys paid into the State Treasury." § 215.26(1), Fla. Stat. That person must file an application for refund with the Chief Financial Officer. § 215.26(2), Fla. Stat. And "applications for refund must be filed within three years after the right to the refund accrued." *Id.*

The Florida Administrative Code provides that "[w]henever a dealer credits a customer . . . for tax erroneously collected, the dealer must refund such tax to the customer before the dealer's claim to the State for credit or refund will be approved." Fla.

4

Admin. Code R. 12A–1.014(3).  Similarly, Florida law provides that "[f]unds collected from a purchaser under the representation that they are taxes provided for under the state revenue laws are state funds from the moment of collection and are not subject to refund absent proof that such funds have been refunded previously to the purchaser."  § 213.756(1), Fla. Stat.

However, even though the statute only permits the *taxpayer* to receive the refund, the Code requires that "[a] taxpayer who has overpaid tax to a dealer, or who had paid tax to a dealer when no tax is due, must secure a refund of the tax from the dealer and not from the Department of Revenue."  Fla. Admin. Code R. 12A–1.014(4).  The Code then instructs dealers to file an application to seek a refund from the Department of Revenue.  Fla. Admin. Code R. 12A–1.014(5).

But when an application for refund is denied, the statute permits only the "taxpayer" to "contest a denial of refund of tax . . . paid under a section or chapter specified in section 72.011(1) pursuant to the provisions of section 72.011."  § 215.26(6), Fla. Stat.[2]  Section 72.011 also provides that it is the "taxpayer" who may contest a refund denial in circuit court or by petitioning under chapter 120.  § 72.011(1)(a), Fla. Stat.  And "the requirements of [section 72.011(1)] are jurisdictional." § 72.011(5), Fla. Stat.  Then section 120.80(14)(b) tells us that "in any administrative proceeding brought pursuant to this chapter as authorized by section 72.011(1), the *taxpayer* shall be designated as the 'petitioner.'" (emphasis supplied).

And so we see that, unlike the Code which says a dealer is the proper party to seek a refund from the Department, Florida law only allows the *taxpayer* to receive a refund or to contest a refund denial.  *See* § 215.26(1) and (6), Fla. Stat.  Meanwhile, the Code states a "taxpayer" who paid excess taxes "must secure a refund

---

[2] Section 215.26 is a jurisdiction statute of non-claims.  *Victor Chem. Works v. Gay*, 74 So. 2d 560, 562 (Fla. 1954). Thus, it bars claims that do not comply with its requirements.  *Id.*  ("A refund is a matter of grace and if the statute of non-claim is not complied with, the statute becomes an effective bar in law and in equity.").

from the dealer and not from the Department of Revenue." Fla. Admin. Code R. 12A–1.014(4).[3]

It is no surprise then that Oracle argues on appeal that it is entitled to a refund, especially since rule 12A–1.014 sets out a refund process for a "dealer," "purchaser," "lessee," "customer," and "taxpayer."[4] The code does not define these terms, nor does it apply the terms consistently. That said, we adjudicate disputes based on the language of Florida law, even where it may be in conflict with a promulgated rule. *See Dep't of Bus. Regul. v. Salvation Ltd.*, 452 So. 2d 65, 66 (Fla. 1st DCA 1984) ("It is axiomatic that an administrative rule cannot enlarge, modify or contravene the provisions of a statute."). With this in mind, we turn to the merits.

## C. Oracle is Not the Taxpayer

At each juncture, Oracle's tax refund requests were denied or dismissed for the same looming defect in its applications—the failure to first refund its customers. But Oracle asserts that it need not refund the taxes to its customers before seeking a refund from the Department. The texts of the governing statutes say otherwise.

"The words of a governing text are of paramount concern, and what they convey, in their context, is what the text means." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* § 2 at 56 (2012). To reiterate, Florida law provides that the Chief Financial Officer may only issue a tax refund to "the person who paid same, or his or her heirs, personal representatives, or assigns." § 215.26(1), Fla. Stat.

---

[3] The Code does permit a dealer to assign this purported right to seek a refund to its "customers." Fla. Admin. Code R. 12–26.008.

[4] Nor is it a surprise that Oracle argues this case "is a story of bureaucratic dysfunction in administering a refund process that, by law, should be simple."

The court in *Dep't of Revenue v. Daystar Farms, Inc.*, 803 So. 2d 892, 896 (Fla. 5th DCA 2002), determined that the lessor in a lessor-lessee transaction lacked standing to initiate a refund action because it was not the "person or entity bearing the tax burden." Similarly, the court in *State ex rel. Szabo Food Services, Inc. of N. Carolina v. Dickinson*, 286 So. 2d 529, 532 (Fla. 1973), determined that the dealer lacked standing to seek a refund for taxes "paid by the purchaser or consumer." While both *Daystar* and *Szabo* are procedurally distinguishable, the decisions show that section 215.26 means what it says—that the person who paid the tax is the proper person or entity to be refunded.

Further, after an application has been denied, Florida law unequivocally states the "taxpayer" is the person or entity who may contest the refund denial. § 72.011(1)(a), Fla. Stat. The relevant statutes leave "taxpayer" undefined. But we need not overcomplicate it. Black's Law Dictionary defines a taxpayer as "someone who pays or is subject to a tax." *Taxpayer*, BLACK'S LAW DICTIONARY (11th ed. 2019). And there is nothing in the statutes that suggest any other meaning. Reading section 215.26(1) and section 72.011(1)(a) together, therefore, requires that the refund be paid to the person who paid the tax (i.e., the person who bore the tax burden), and that taxpayer is the person entitled to contest a refund denial.

Applying the text here, we agree with the Department that Oracle could not receive a refund or contest the refund denials. Oracle is not "the person who paid same, or his or her heirs, personal representatives, or assigns;" that is, Oracle is not the "taxpayer." Without first returning the collected excess taxes to its customers, Oracle acts only within its prescribed duties as a dealer—collecting taxes from its customers and remitting those taxes to the state. *See* §§ 212.07(1)(a), 212.06(1)(a), Fla. Stat. It did not pay the tax. But it collected taxes, which upon collection became state funds that must be remitted. §§ 212.06(1)(a), 212.15(1), Fla. Stat.

Simply put, Oracle is acting "as the state's agent." *Blackshears II Aluminum, Inc. v. Dep't of Revenue*, 641 So. 2d 928, 929 (Fla. 5th DCA 1994) (holding that the dealer was properly subject to penalties and interest for collecting money for

7

nontaxable transactions from its customers, which the dealer needed to either remit to the state or refund to its customers). What's more, under the statutory framework, Oracle may be compensated for serving the State as a dealer. *See* § 212.12(1), Fla. Stat. This too demonstrates that Oracle acted as a dealer, not the taxpayer.

Oracle, therefore, could not receive a refund, nor could it challenge the refund denials under Florida law.

### D. Oracle's Argument

Oracle argues that, because the parties agree a refund is due, the Department should conditionally approve Oracle's refund application, and once approved, Oracle can then refund its customers to become entitled to the refund. We first note that this argument essentially concedes that Oracle is not now entitled to the refund. Instead, the thrust of Oracle's argument is that it should not be forced to assume the risk. That is, if a dealer refunds a customer and the Department then denies the application, the dealer will lose the money refunded to the customer. In the Nielsen matter, for example, $739,145.49 is at risk.

But this is a policy argument. It does not matter if we think there may be a better way to skin the proverbial cat. Oracle provides no basis in Florida law that would permit an application for a tax refund to be conditionally approved. Instead, Florida law expressly states that the taxes Oracle collected are "state funds from the moment of collection and are not subject to refund absent proof that such funds have been refunded previously to the purchaser." § 213.756(1), Fla. Stat.

At no time has Oracle stepped into the shoes of the taxpayer by bearing the tax burden or paying the taxes. It is, therefore, not the taxpayer. It is only a dealer, who collected taxes paid by its customers and remitted those taxes to the Department. Therefore, the ALJ properly determined that Oracle was not entitled to a refund. And the Department properly concluded that Oracle could not contest the refund denials.

AFFIRMED.

8

ROBERTS, J., concurs; WINOKUR, J., concurs with opinion.

_____

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

_____

WINOKUR, J., concurring.

I agree that the applicable statutes constrain us to affirm the order below. Because the majority addresses why Oracle is not a taxpayer, I write separately to address why "standing" is an improper way to describe the ability of a party to bring an action before the Division of Administrative Hearings (DOAH) under the Administrative Procedure Act (APA).[*]

DOAH is an administrative agency, not a court. *See* Art. V, § 1, Fla. Const. ("No other courts may be established by the state . . . ."); *see also* § 120.50, Fla. Stat. (stating that the APA shall not apply to the Legislature or the courts); § 120.65(1), Fla. Stat. (stating that DOAH lies "within the Department of Management Services"). Likewise, administrative law judges hold offices created by the Legislature; they are not judicial officers holding positions established by the Constitution. *Compare* Art. V, § 8, Fla. Const. (establishing the eligibility criteria for the "office of justice" and the "office of judge") *with* § 120.65(4), Fla. Stat. ("[The Division of Administrative Hearings] shall employ administrative law judges to conduct hearings required by [the APA] or other law."). Because they do not hold judicial office, administrative law judges do not wield "judicial power." *See* Art. V, § 1, Fla. Const. ("The

---

[*] For similar reasons, I disagree with the use of the term "jurisdiction" to refer to the statutory authority of the DOAH to make an administrative recommendation or determination. Similarly, the terms "collateral estoppel" and "res judicata" have no place in administrative proceeding.

judicial power shall be vested in a supreme court, district courts of appeal, circuit courts and county courts.").

That distinction matters, as the term "standing" has a specific meaning—it refers to the ability of someone or something to invoke a court's judicial power by demonstrating a direct and articulable stake in the outcome of litigation. *See Brown v. Firestone*, 382 So. 2d 654, 662 (Fla. 1980) (holding that "a party does not possess standing to sue unless he or she can demonstrate a direct and articulable stake in the outcome of a controversy."); *Nedeau v. Gallagher*, 851 So. 2d 214, 215 (Fla. 1st DCA 2003) (noting that "[s]tanding depends on whether a party has a sufficient stake in a justiciable controversy, with a legally cognizable interest which would be affected by the outcome of the litigation."); *cf. Moody v. NetChoice, LLC*, 144 S. Ct. 2383, 2415 (2024) (Thomas, J., concurring in the judgment) (noting that "a plaintiff can maintain a suit in a federal court—*and thus invoke judicial power*—only if he has suffered an 'injury' with a 'traceable connection' to the 'complained-of conduct of the defendant.'" (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998) (emphasis supplied)); *cf. also TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) ("To demonstrate their personal stake [in the outcome of the case], plaintiffs must be able to sufficiently answer the question: 'What's it to you?'" (citing Scalia, The Doctrine of Standing as an Essential Element of the Separation of Powers, 17 Suffolk U. L. Rev. 881, 882 (1983))).

Setting aside the differences between the Florida Constitution and the Federal Constitution, I nevertheless agree with the Supreme Court of the United States that standing is a constitutional requirement. *See Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 378 (2024) ("Article III standing is a 'bedrock constitutional requirement that this Court has applied to all manner of important disputes.'" (quoting *United States v. Texas*, 599 U.S. 670, 675 (2023))); *cf. Planned Parenthood of SW & Cent. Fla. v. State*, 384 So. 3d 67, 93 (Fla. 2024) (Sasso, J., concurring) (questioning whether standing in Florida flows from "article V's conception of 'judicial power'" or from "the access to courts provision of article I, section 21").

In stark contrast to the standing doctrine, the ability of a party to seek an administrative determination under the APA is controlled by the Legislature, not the Constitution. *See, e.g.,* § 120.56(1)(a), Fla. Stat. ("Any person substantially affected by a rule or a proposed rule may seek an administrative determination of the invalidity of the rule on the ground that the rule is an invalid exercise of delegated legislative authority"); § 120.569(1), Fla. Stat. (providing an administrative proceeding when "the substantial interests of a party are determined by an agency"). While it certainly may be an issue whether a party has an interest sufficient to invoke the procedures of the APA, as required by statute, the term "standing" should have no application when determining whether of a party has the authority to bring an administrative proceeding under the APA.

_____

Jonathan W. Taylor and Rex D. Ware of Moffa, Sutton, & Donnini, P.A., Fort Lauderdale, for Appellant.

Jacek P. Stramski, Special Counsel, Tallahassee, for Appellee.

11